No. 106,605

STATE OF KANSAS, *Appellant*, v. KALA JONES, *Appellee*.

(333 P.3d 886)

Opinion filed August 29, 2014.

*Seth Lowry* and *Linda J. Lobmeyer*, assistant county attorneys, *John P. Wheeler, Jr.*, former county attorney, *Susan Lynn Hillier Richmeier*, county attorney, and *Derek Schmidt*, attorney general, were on the briefs for appellant.

*Therese Marie Hartnett*, of Western Regional Public Defender's Office, was on the briefs for appellee.

The opinion of the court was delivered by

LUCKERT, J.: In this interlocutory appeal, a divided Court of Appeals panel affirmed a district judge's order suppressing evidence seized during a warrantless vehicle search conducted incident to a traffic stop. *State v. Jones*, 47 Kan. App. 2d 866, 878, 280 P.3d 824 (2012). The three judges on the panel agreed the district judge erred in concluding that the pretextual nature of the traffic stop rendered the seizure constitutionally invalid, but a majority of the panel concluded the district judge's decision to suppress the evidence should be affirmed on alternate grounds. Specifically, the majority held the law enforcement officer did not have a reasonable suspicion that justified the search. In the dissent, the third member of the panel concluded it was inappropriate to do anything but reverse and remand the case for additional findings by the district court regarding whether a reasonable suspicion existed.

On petition for review of that decision, we affirm the Court of Appeals majority. Although the dissenting judge was correct that an appellate court cannot conduct factfinding, an appellate court conducts a de novo review of the totality of the circumstances to determine whether reasonable suspicion exists. Hence, as long as the facts are undisputed or a reasonable suspicion determination can be made based on the district judge's factual findings, an appellate court can assess whether reasonable suspicion exists. In this case, the undisputed facts and the district judge's findings of fact are sufficient for appellate review of the totality of circumstances. Based on that review, we agree with the Court of Appeals majority

that the circumstances did not establish a reasonable suspicion that justified a search of the vehicle. Thus, the search of the vehicle was invalid, and the evidence was appropriately suppressed.

We, therefore, affirm the district court and the Court of Appeals.

## PROCEDURAL AND FACTUAL HISTORY

Kala Jones was stopped by Garden City Police Officer Bill Powers late one night when she was "just driving around" her mother's neighborhood; she explained that she and her passengers—her little brother and one of his friends—wanted to hear the end of a song and so kept driving rather than stopping at her mother's home. Officer Powers observed Jones "driving erratically." He explained that he observed Jones "[t]urning abruptly, turning going [the] opposite direction[]" from the one she had been travelling and turning without signaling. Officer Powers suspected the driver was trying to avoid detection and pulled the vehicle over for various traffic infractions, including the failure to use a turn signal.

Officer Powers stopped Jones and asked for her identification. As Jones responded, according to the officer, "Her mouth appeared to be dry, to me, like she had cotton mouth. And her words were slurred." Officer Powers also observed an empty, clear plastic baggy, which led to a "suspicion that there was something inside of the vehicle." He testified that "from my training and experience, [the presence of a plastic baggy] indicates . . . the possibility of controlled substances."

Officer Powers asked Jones for permission to search the vehicle, but Jones refused. Officer Powers contacted his immediate supervisor, who arrived 5 to 10 minutes after the stop, and then called for a K-9 unit. Officer Powers testified that approximately 15 to 20 minutes elapsed between the traffic stop and the arrival of the K-9 unit; in comparison, it typically takes him approximately 10 to 15 minutes after initiating a traffic stop to write a citation. Jones disputed Officer Powers' estimate of time, testifying that it took 10 or 15 minutes to run the check on her license and 40 minutes for the K-9 unit to arrive.

The K-9 detected the presence of illegal substances in the vehicle. A subsequent search of the vehicle revealed a purse in which

three pen tubes were located. Officer Powers believed the tubes were used to ingest cocaine. Officer Powers arrested Jones for possession of cocaine in violation of K.S.A. 2010 Supp. 21-36a06(a) and possession of drug paraphernalia in violation of K.S.A. 2010 Supp. 21-36a09(b)(2). He did not write a traffic citation or conduct any tests to determine whether Jones had been driving under the influence of drugs or alcohol.

Before Jones' preliminary hearing, she filed a motion to suppress the evidence obtained during the warrantless search of her vehicle. An evidentiary hearing was conducted before District Magistrate Judge Ricklin J. Pierce at which both Officer Powers and Jones testified. The district magistrate judge denied the motion to suppress.

Before trial, Jones filed a second motion to suppress that was considered by District Judge Michael L. Quint. The State again presented Officer Powers' testimony. Although the officer's testimony was substantially similar to his previous testimony before the district magistrate judge, there were differences, and the hearing resulted in a different outcome. In a written order, the district judge suppressed the evidence obtained during the search of Jones' vehicle. The judge acknowledged that the officer had testified to what he labeled as "erratic driving" and that there was conflicting evidence regarding the duration of the stop. The judge then concluded:

"13. It is this Court's finding, based upon the testimony, that the officer was playing a hunch and the traffic stop and the ticket for no use of a turn signal was merely a pretext to hold the Defendant illegally for as long as necessary to get a K-9 unit there in the hope of securing a probable cause finding for searching the vehicle.

"14. If a traffic citation was justified, the officer had only as long as it was reasonably necessary to write the ticket and then release the Defendant to go on her way. Obviously since no ticket was ever [written], it adds weight to the claim that the stop was only a pretext and that the officer violated the Defendant's constitutional right against unreasonable search and seizures."

On interlocutory appeal, a majority of a divided Court of Appeals panel affirmed the district judge's ruling, although on different grounds. *Jones*, 47 Kan. App. 2d at 878. The majority held that the

district judge's decision was erroneous because he relied on the pretextual nature of the traffic stop. 47 Kan. App. 2d at 878. Nevertheless, the majority analyzed whether there was a basis to extend the traffic stop. Listing the factors articulated by the officer when asked what he observed that was "out of the ordinary"—Jones' slurred speech and cotton mouth and the presence of an empty, clear plastic baggy—the majority concluded "there was no reasonable suspicion to justify further detention of the suspect." 47 Kan. App. 2d at 869, 872. Then, assuming alternatively that the officer's suspicion was objectively reasonable, the majority considered whether the detention had been reasonably extended. Noting that a traffic stop cannot exceed the duration necessary to carry out the purpose of the stop, the majority held the wait for the K-9 unit, which the majority concluded was an additional 20 to 30 minutes, unreasonably prolonged the traffic stop. 47 Kan. App. 2d at 876-78.

Judge Buser dissented even though he agreed with the majority that the district judge's legal basis for suppressing the evidence— the pretextual nature of the stop—was erroneous. According to Judge Buser, the majority should have ended its analysis there and remanded the case to the district court for consideration of whether the officer held a reasonable suspicion. Judge Buser viewed the majority's focus on the reasons articulated by the officer as an adoption of a subjective standard rather than the objective standard imposed by the United States Supreme Court. In addition, he observed that the district judge had not mentioned or analyzed whether the officer had a reasonable suspicion to extend the traffic stop. Therefore, "the record on review does not support a presumption that the [district judge] found all the facts necessary to support the judgment." 47 Kan. App. 2d at 879 (Buser, J., dissenting).

Finally, Judge Buser commented on the majority's consideration of the duration of Jones' detention, raising three points. First, he noted the lack of a finding by the district judge regarding whether Officer Powers or Jones' testimony about the duration of the detention was more believable. Second, Judge Buser believed that the majority's timeframe of 20 to 30 minutes was not supported by

the evidence. Third, he asserted that the majority relied on improper caselaw; he quoted *State v. Anderson,* 281 Kan. 896, 903, 136 P.3d 406 (2006), for its holding that a driver may be detained beyond the conclusion of a traffic stop for a K-9 sniff if officers have " 'ample information to support a reasonable suspicion that [the driver] was engaged in illegal drug activity.' " 47 Kan. App. 2d at 888 (Buser, J., dissenting).

The State petitioned this court for review of the Court of Appeals' decision, and this court granted the request. See K.S.A. 22-3602(e) (party may petition the Supreme Court for review as provided in K.S.A. 20-3018[b]); K.S.A. 20-3018(b) (party aggrieved by a decision of the Court of Appeals may petition the Supreme Court for review); Supreme Court Rule 8.03(e)(2) (2013 Kan. Ct. R. Annot. 74) (discretion in granting review).

## ANALYSIS

In briefs filed with this court, the State primarily builds on points made in Judge Buser's dissent and asserts the Court of Appeals majority improperly applied a subjective analysis to determine whether reasonable suspicion existed to extend the traffic stop. The State argues that if the Court of Appeals had applied an objective standard and considered the totality of the circumstances, it would have concluded that the officer's suspicion was objectively reasonable. Alternatively, the State contends the case should be remanded so the district court can make the necessary factual findings regarding whether Jones was driving erratically and regarding the duration of the stop.

Jones replies that the district judge's factual findings were sufficient, supported by the record, and justified the finding that Officer Powers did not have a reasonable suspicion to detain Jones for any longer than necessary to check her driver's license, registration, and proof of insurance and to issue a traffic ticket.

### The Seizure

We begin our analysis at the point that was the basis for the district judge's ruling—the traffic stop. In her motion to suppress, Jones argued the initial stop was unconstitutional and that the "sub-

sequent search of her vehicle, her passengers and her purse [was] never free of 'taint' from an improper initial encounter."

As Jones argues, when a law enforcement officer displays authority and restrains an individual's liberty by stopping a vehicle on a public roadway, constitutional issues arise because a seizure occurs within the meaning of the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights, both of which protect individuals against unreasonable searches and seizures. See, *e.g.*, *State v. Garza*, 295 Kan. 326, 331-32, 286 P.3d 554 (2012); *State v. Moore*, 283 Kan. 344, 349, 154 P.3d 1 (2007); *Anderson*, 281 Kan. at 901. In order for a law enforcement officer's seizure of a citizen to be constitutionally reasonable, the officer must know of specific and articulable facts that create a reasonable suspicion the seized individual is committing, has committed, or is about to commit a crime or traffic infraction. *Garza*, 295 Kan. at 332 (citing K.S.A. 22-2402[1] and *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 [1968]).

If a seized individual believes this standard has not been met and, therefore, files a motion to suppress, the State has the burden of establishing the reasonableness of the seizure and generally may do so by producing the officer's testimony that he or she observed a driver commit a traffic infraction before initiating the stop. This observation and testimony suffices because a traffic infraction provides an " ' "objectively valid reason to effectuate a traffic stop." ' " *State v. Marx*, 289 Kan. 657, 662, 215 P.3d 601 (2009) (quoting *Moore*, 283 Kan. at 350); see *Anderson*, 281 Kan. at 901 ("State bears the burden to demonstrate that a challenged seizure or search was lawful.").

In this case, the district judge recognized that Officer Powers stopped Jones after he observed Jones commit traffic infractions; the infraction specifically mentioned by the district judge was Jones' failure to use a turn signal. See K.S.A. 8-1548(a) ("No person shall turn a vehicle . . . without giving an appropriate signal."). Nevertheless, the judge did not believe this justified the seizure because the officer was "playing a hunch and the traffic stop . . . was merely a pretext to hold the Defendant illegally for as long as necessary to get a K-9 unit there in the hope of securing a probable

cause finding for searching the vehicle." The judge also reasoned that the fact the officer did not write a ticket "adds weight to the claim that the stop was only a pretext."

On appeal, all three members of the Court of Appeals panel agreed that a bifurcated standard of review applied to its consideration of this ruling. Specifically, "an appellate court generally reviews the factual findings underlying the district court's suppression decision using a substantial competent evidence standard and the ultimate legal conclusion drawn from those factual findings by applying a de novo standard. [An appellate] court does not reweigh the evidence." *Jones*, 47 Kan. App. 2d at 870 (citing *State v. Ransom*, 289 Kan. 373, 380, 212 P.3d 203 [2009]); see *Garza*, 295 Kan. at 330-31; *State v. Coleman*, 292 Kan. 813, 817, 257 P.3d 320 (2011); *State v. Thompson*, 284 Kan. 763, 772, 166 P.3d 1015 (2007).

In addition, all three members of the Court of Appeals panel agreed the initial stop was constitutionally legitimate. Each of them concluded substantial competent evidence supported the district judge's factual finding that Officer Powers observed Jones commit at least one traffic infraction. And they were unanimous in holding that the district judge erred in his legal conclusion that the pretextual nature of the stop made the seizure illegal.

We agree with these holdings. The officer's testimony provides substantial competent evidence of a traffic infraction, and the district judge made an error of law. The United States Supreme Court has specifically held that a traffic stop is not rendered invalid by the fact it is "a mere pretext for a narcotics search." *United States v. Robinson*, 414 U.S. 218, 221 n.1, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973); see *Whren v. United States*, 517 U.S. 806, 812, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996) ("an officer's motive [does not] invalidate[] objectively justifiable behavior under the Fourth Amendment"). This court has adopted the same view. See, *e.g.*, *Garza*, 295 Kan. at 332; *Marx*, 289 Kan. at 662; *Moore*, 283 Kan. at 350; *Anderson*, 281 Kan. at 901; *State v. DeMarco*, 263 Kan. 727, 733, 952 P.2d 1276 (1998).

In the State's petition for review, it does not take issue with the panel's conclusion that the initial stop was valid. Jones, however,

in her supplemental brief submitted to this court, argues her motion to suppress "makes it clear" that she objected to the initial stop. But Jones did not file a cross-petition for review asking us to hold that the Court of Appeals erred in this unanimous determination. Moreover, she does not even suggest why the stop was invalid. Nor does she cite authority for support. Consequently, her objection to the initial stop and her seizure has not been preserved for our review. *State v. Boleyn*, 297 Kan. 610, Syl. ¶ 10, 303 P.3d 680 (2013) (issue not briefed on appeal is deemed waived and abandoned); *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 172, 298 P.3d 1120 (2013) ("party aggrieved by a decision of the Court of Appeals on a particular issue must seek review in order to preserve the matter for Kansas Supreme Court review); see also *State v. Ward*, 292 Kan. 541, 580, 256 P.3d 801 (2011 (issue not raised in petition for review deemed abandoned), *cert. denied* 132 S. Ct. 1594 (2012).

In light of Jones' failure to counter the application of the general rule that a pretextual stop is constitutionally valid, we hold Officer Powers' seizure of Jones was valid. We next consider whether the officer's investigatory detention of Jones was constitutional.

*The* Terry *Detention*

While a traffic infraction is a legitimate basis for law enforcement to initiate a vehicle stop, the United States Supreme Court has emphasized that the seizure must be of short duration if it occurs " 'in situations where' . . . the stop is justified by suspicion (reasonably grounded, but short of probable cause) that criminal activity is afoot." *Arizona v. Johnson*, 555 U.S. 323, 330, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009) (quoting *Terry*, 392 U.S. at 24). " '[M]ost traffic stops,' " according to the United States Supreme Court, " 'resemble, in duration and atmosphere, the kind of brief detention authorized in *Terry*.' " *Johnson*, 555 U.S. at 330 (quoting *Berkemer v. McCarty*, 468 U.S. 420, 439 n.29, 104 S. Ct. 3138, 82 L. Ed. 2d 317 [1984]). Nevertheless, "[a] seizure that is justified solely by the interest in issuing a warning [or traffic] ticket to the driver can become unlawful if it is prolonged beyond the time reasonably

required to complete that mission." *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005).

Consistent with these principles, the legitimacy of the duration of a traffic stop is measured by the time it takes for an officer to ask for, obtain, and record the driver's license, proof of insurance, and vehicle registration; run a computer check; and issue a citation. *Coleman*, 292 Kan. at 816. As a general principle, once the officer determines that the driver has a valid license and the purpose for the traffic stop has ended, the driver must be allowed to leave without further delay. *Coleman*, 292 Kan. at 816; *Anderson*, 281 Kan. at 902; *State v. Mitchell*, 265 Kan. 238, 245, 960 P.2d 200 (1998).

In this case, Officer Powers asked Jones for her driver's license, registration, and insurance and then asked her to get out of her vehicle. The request to step out of the car has been determined by the United States Supreme Court to be constitutional because the government's "legitimate and weighty" interest in officer safety outweighs the "de minimis" additional intrusion of requiring a driver, already lawfully stopped, to exit the vehicle. *Pennsylvania v. Mimms*, 434 U.S. 106, 110-11, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977). Thus, up to this point, the stop remained valid.

While Officer Powers waited for verification of the validity of Jones' driver's license, he asked Jones about her views regarding controlled substances. This change in the direction of the officer's investigation from a traffic infraction to questioning about drugs did not infringe on Jones' constitutional rights because "[a]n officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Johnson*, 555 U.S. at 333; *Coleman*, 292 Kan. at 816; *State v. Morlock*, 289 Kan. 980, 986-89, 218 P.3d 801 (2009). Nothing in the record indicates that these initial questions measurably extended the duration of the stop.

From that point, the officer focused on the drug investigation. He did not issue a citation nor did he investigate whether Jones had been driving under the influence, despite his belief she had been "driving erratically" and his observation that "[h]er mouth

appeared to be dry . . . like . . . cotton mouth. And her words were slurred." Instead, the officer contacted other officers and arranged for the K-9 unit. Employing a drug-sniff was constitutionally valid, as long as it did not prolong the stop beyond the time necessary to accomplish the original purpose of issuing a traffic citation. See *Caballes*, 543 U.S. at 407; *Anderson*, 281 Kan. at 903.

Addressing the duration of the stop, the district judge noted: "If a traffic citation was justified, the officer had only as long as it was reasonably necessary to write the ticket and then release the Defendant to go on her way." The judge also found that Officer Powers conceded that the duration of the stop was longer than a typical traffic stop. This finding, which is supported by substantial competent evidence, draws into question the constitutionality of the extended detention.

## The Extended Detention

An officer may expand the investigative detention beyond the duration necessary to fulfill the purpose of the initial stop only if there is an objectively reasonable and articulable suspicion that criminal activity was or is taking place. See *Coleman*, 292 Kan. at 816-17 (citing *United States v. Sharpe*, 470 U.S. 675, 682, 105 S. Ct. 1568, 84 L. Ed. 2d 605 [1985]; *United States v. Williams*, 271 F.3d 1262, 1267 [10th Cir. 2001]; *State v. Thomas*, 291 Kan. 676, Syl. ¶ 8, 246 P.3d 678 [2011]; K.S.A. 22-2402). The district judge, although focusing on the pretextual nature of the stop, indicated the "officer was playing a hunch" and held Jones "illegally for as long as necessary to get a K-9 unit there in the hope of securing a probable cause finding for searching the vehicle."

Although ambiguous, the district judge's use of the word "hunch" is a significant conclusion in light of the frequent statements in opinions of the United States Supreme Court and this court indicating that an officer must be able to articulate more than an "inchoate and unparticularized suspicion" or "hunch" of possible criminal activity. *Illinois v. Wardlow*, 528 U.S. 119, 123-24, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000); *Thomas*, 291 Kan. at 688.

The State essentially ignores the district judge's conclusion that the officer acted on nothing more than a hunch and argues we should conclude the officer possessed an objectively reasonable suspicion or, alternatively, should remand this case to the district court for further factual findings; Judge Buser, in his dissent, agreed with this position. The State paints with too broad a brush, however, because the question of whether reasonable suspicion exists is a question of law and is reviewed de novo by appellate courts. See *Coleman*, 292 Kan. at 817; *State v. Walker*, 292 Kan. 1, Syl. ¶ 5, 251 P.3d 618 (2011) (appellate courts use a mixed question standard of review, the legal conclusion is reviewed de novo and the district court's factual findings are reviewed for substantial competent evidence); *Moore*, 283 Kan. at 350 (same); see, *e.g.*, *Thomas*, 291 Kan. at 688-89 (district court concluded voluntary encounter between law enforcement and defendant and did not consider reasonable suspicion; this court disagreed finding the encounter turned into an investigatory detention and considered whether the officer had reasonable suspicion to support the detention).

Furthermore, this de novo appellate determination of whether an officer had a reasonable suspicion of illegal activity rests on the same standard as the one that applies when a district judge makes the same determination: Any court making a reasonable suspicion determination must be able to find by a preponderance of the evidence that the State has presented "at least a minimal level of objective justification" which, when examined under the totality of the circumstances, justifies a reasonable suspicion of the presence of illegal drugs or of some other serious criminal activity. *Coleman*, 292 Kan. at 817-18; *Mitchell*, 265 Kan. 238, Syl. ¶ 4. Because an appellate court makes a de novo determination under this standard, appellate review is not necessarily precluded simply because a district judge failed to explicitly state whether an officer had a reasonable suspicion of illegal activity. Thus, while we read the district judge's order to include an implicit determination that Officer Powers lacked a reasonable suspicion to extend the stop, appellate review is not precluded even if we are overreading the meaning of the district judge's order.

Nevertheless, an appellate court's de novo review can only be based on factual findings made by the district judge. An appellate court cannot resolve disputed facts. *State v. Hicks*, 282 Kan. 599, 608, 147 P.3d 1076 (2006) (district court's findings of fact control and should be accepted as the basis upon which the district court's suppression of evidence is reviewed). Thus, we must evaluate whether there are disputed facts that were not resolved by the district judge.

In doing so, we examine only the evidence presented to the district judge because this appeal arises from the district judge's— not the district magistrate judge's—order. The State started anew in the hearing before the district judge by presenting testimony, and there is no indication in the record that the district judge was asked to consider the transcript from the hearing before the magistrate judge. See *Garza*, 295 Kan. at 329 ("an appellate court only obtains jurisdiction over the ruling identified in the appeal"); *Hicks*, 282 Kan. at 608 (the findings of fact of the district court control and should be accepted as the basis upon which the district court's suppression of evidence is reviewed). Significantly, there were differences in the evidence the State had submitted to the district magistrate judge. The Court of Appeals majority cited two differences. First, before the district judge, the officer did not mention the appearance of Jones' eyes, but before the magistrate judge he testified that Jones' " 'eyes were bloodshot.' " *State v. Jones*, 47 Kan. App. 2d 866, 872, 280 P.3d 824 (2012). Second, according to the Court of Appeals majority, in contrast to the hearing before the magistrate, "[a]t no time [in the hearing before the district judge] did the officer indicate that his reasonable suspicion was based in part on the driving violations that formed the basis of his vehicle stop." 47 Kan. App. 2d at 872-73.

The officer also gave different responses when asked to summarize the basis the suspicion that justified the search. As the Court of Appeals majority stated: "At the initial suppression hearing before the magistrate judge, he stated, 'She had cotton mouth, dry mouth. . . . Her eyes were bloodshot. Her words were slurry. I saw a clear plastic baggy inside of the truck.' "47 Kan. App. 2d at 872. In contrast, before the district judge, when the officer was

"asked what he observed that was 'out of the ordinary' about Jones, he indicated, " '[J]ust slurred speech and the cotton mouth' and then added his observation of 'a clear plastic baggy.' " 47 Kan. App. 2d at 872.

In the State's petition for review and brief submitted to this court, the State takes issue with the majority's focus on only those factors the officer articulated in answer to this single question. According to the State, this narrow focus on the officer's articulated basis for his reasonable suspicion converted the reasonable suspicion evaluation from an objective to a subjective standard. The State also argues the majority inappropriately ignored facts that support a reasonable suspicion, specifically Jones' bloodshot eyes and her erratic driving. We disagree.

As to the first point regarding the subjective versus objective nature of the inquiry, the United States Supreme Court has explained the State does not meet its burden by simply proving that the officer believed the circumstances were sufficient to form a reasonable suspicion. Rather, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21. Consequently, "[a] court sitting to determine the existence of reasonable suspicion must require the agent to articulate the factors leading to that conclusion." *United States v. Sokolow*, 490 U.S. 1, 10, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989).

Yet, the officer's articulation of facts does not end the review because "[t]he scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances." *Terry*, 392 U.S. at 21. This detached review requires application of an objective standard: "[W]ould the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" 392 U.S. at 21-22. The United States Supreme Court has explained that courts "must look at the 'totality

of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273-74, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18, 101 S. Ct. 690, 66 L. Ed. 2d 621 [1981]).

Thus, the Court of Appeals majority was correct in looking to the record for factors the officer articulated as the basis for his determination of reasonable suspicion. Nevertheless, we disagree with the Court of Appeals majority's suggestion, which is implied in its language although not specifically stated, that the officer must neatly package the factors in a single succinct answer. Because of the requirement that a court consider the totality of the circumstances, all facts and inferences, not a select few, must be considered. Therefore, we should not focus on a single answer and overlook an officer's omission of a factor when asked to list the basis for a reasonable suspicion if at some point in the officer's testimony he or she indicated the circumstance was a factor in developing a suspicion of illegal activity.

This leads to the State's second argument, which is that by focusing on the officer's answer to a single question about what the officer observed that "was out of the ordinary," the majority ignored significant facts, including Jones' bloodshot eyes and erratic driving. But the State runs into problems with the record on both of these factors.

Regarding Jones' bloodshot eyes, the State does not cite to a point in the hearing before the district judge where the officer gave such a description. Like the Court of Appeals, we can only find that testimony in the transcript of the hearing before the district magistrate judge. Thus, there is no evidence to support the State's contention that the district judge or the Court of Appeals as it reviewed the district judge's ruling should have considered the appearance of Jones' eyes in evaluating whether reasonable suspicion existed to extend the traffic stop. We agree with the Court of Appeals majority's conclusion that the State is not entitled to a "second bite of the apple" to meet its burden of establishing the rea-

sonableness of the detention by having the officer add to his testimony. *Jones*, 47 Kan. App. 2d at 873.

The State faces a different problem with regard to the erratic driving. Contrary to the majority's conclusion that the officer did not mention erratic driving as a basis for his suspicion, the officer did testify before the district judge that he observed "the vehicle driving erratically." He also described what he meant by this, citing Jones' abrupt turns and her driving in the opposite direction from the direction she appeared to be travelling. Additionally, he testified that "it's not out of reason and it's happened to me in the past that people, when driving erratic such as that, will discard items, like, under the seat." This experience, he indicated, played into his conclusion there might be illegal substances in Jones' vehicle, even though the plastic baggie was empty. As the State and Judge Buser point out, the majority did not factor erratic driving into its evaluation of whether there was a reasonable suspicion.

But as Judge Buser also points out, the evidence of erratic driving was disputed. Jones, in her testimony, explained she was merely "driving regular[ly]" near her mother's home because she wanted to hear the end of a song before she got out of her vehicle. While the district judge cited the officer's testimony that he observed "erratic driving," the judge did not make a factual finding resolving the dispute. We agree with Judge Buser's view that it would be inappropriate for us or any appellate court to make the factual finding and resolve a disputed point. See *State v. Berriozabal*, 291 Kan. 568, 591, 243 P.3d 352 (2010) (appellate court only reviews factual findings made by district court; it does not make findings).

Judge Buser opined that this case should be remanded to allow the district judge to make those findings. Before us, the State agrees that remand is appropriate if additional factfinding is necessary. Such a remand would be futile, however, if adding the factor of erratic driving to the consideration of the totality of circumstances would still leave the State short of its burden of establishing the basis for a reasonable suspicion that Jones possessed illegal substances or drug paraphernalia. Like the district judge, we conclude the circumstances, even with the erratic driving, merely es-

tablished the basis for a "hunch," not an articulable reasonable suspicion.

According to the officer, Jones' driving was erratic because she backtracked and did not drive in a purposeful direction, instead changing direction for no apparent purpose and turning without properly signaling. The officer indicated that in his experience drivers sometimes drive in a similar manner when they are attempting to stash illegal substances. We must give some deference to an officer's training and experience. *Arvizu*, 534 U.S. at 273 (Officers may "draw on their own experience and specialized training to make inferences from and deduction about the cumulative information available to them that 'might well elude an untrained person.' "); *Ornelas v. United States,* 517 U.S. 690, 699, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996) (reviewing court must give "due weight" to factual inferences drawn by resident judges and local law enforcement officers).

Nevertheless, we have cautioned:

"We do not advocate a total, or substantial, deference to law enforcement's opinion concerning the presence of reasonable suspicion. The officers may possess nothing more than an 'inchoate and unparticularized suspicion' or 'hunch ' of criminal activity. [Citation omitted.] Such a level of deference would be an abdication of our role to make a de novo determination of reasonable suspicion." *State v. Moore,* 283 Kan. 344, 359-60, 154 P.3d 1 (2007).

We also are called upon to employ common sense and ordinary human experience in evaluating the totality of the circumstances. See *United States v. Wood,* 106 F.3d 942, 946 (10th Cir. 1997).

Applying these principles to this case, as a matter of common sense, driving in an unusual travel pattern cannot by itself be a license to search a vehicle; if it was, the Fourth Amendment would offer no protection to a driver who is driving in an unfamiliar area and approaches an address from different directions in an attempt to spot a particular house number.

Adding the officer's observation of the clear, empty plastic baggie does not significantly add to the suspicion. Common sense suggests that if the bag had been used to package illegal substances, Jones or her companions would have hidden the bag along with its contents. There is no evidence of an attempt to do so before, dur-

ing, or after the stop. Furthermore, as the Court of Appeals majority observed, there are a multitude of innocent uses for clear plastic bags and the presence of such a bag is not suspicious, at least by itself. See *State v. Ramirez*, 278 Kan. 402, 408, 100 P.3d 94 (2004) (discussing more stringent probable cause standard but concluding standard not met simply because person possesses type of packaging that on other occasions had been used to conceal narcotics); 2 LaFave, Search and Seizure § 3.6(b), pp. 379-410 (5th ed. 2012) and 2013-2014 Supp., pp. 11-13 (collecting cases holding probable cause not established by possession of packaging that can be used for illegal purposes where legal uses are commonplace).

Granted, suspicion might arise if the corner of the baggie had been cut off in a manner often used for packaging illegal substances or the bag had been tied in a knot. Here, at one point in the officer's testimony before the district judge, he described what he observed as the corner of a baggie. When that description was challenged, however, the officer admitted he could not recall the specific appearance and could not say that it was just a corner. Instead, the officer continued to refer to the clear plastic baggie. Thus, all the record establishes is that there was a clear plastic baggie, an article commonly possessed by law abiding citizens.

Even when the totality of these circumstances is considered, we agree with the district judge that the officer acted on a hunch, not reasonable suspicion. Under the facts of this case, a reasonable suspicion sufficient to justify the search of a vehicle did not arise under the totality of the circumstances, which included evidence that the vehicle's driver drove erratically, had cotton mouth, slurred speech, and possessed an empty plastic baggy. Thus, it was impermissible to extend the traffic stop beyond the duration necessary for the stop's legitimate purpose, *i.e.*, for obtaining Jones' identification, the vehicle registration, and proof of insurance; running a computer check; and writing a citation. Because the officer admitted the duration was extended beyond what was necessary for these purposes, we need not remand this case for additional factfinding.

Nor do we need to consider the final point in the Court of Appeals' rationale, which related to the length of the stop. As Judge Buser noted, the duration of the stop was contested and the district

judge did not make a finding regarding the length of the stop. This lack of factual finding makes the majority's discussion suspect. The discussion was unnecessary and essentially dicta; therefore, we need not examine the merits of the majority's analysis, which was not essential to the majority's conclusion that the district judge did not err in suppressing the evidence.

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

MORITZ, J., not participating.