NOT DESIGNATED FOR PUBLICATION

No. 120,323

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

BRIAN M. THOMPSON,
*Appellee*.


MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed August 23, 2019. Reversed and remanded.

*Natasha Esau*, assistant district attorney, *Keith Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Shannon S. Crane*, of Hutchinson, for appellee.

Before GARDNER, P.J., PIERRON, J., and BURGESS, S.J.

PER CURIAM: The State filed an interlocutory appeal under K.S.A. 2018 Supp. 22-3603, arguing the district court erred in suppressing evidence obtained during a traffic stop of Brian M. Thompson. The State argues that the law enforcement officer had reasonable suspicion to initiate the stop of Thompson's vehicle for failing to yield to an authorized emergency vehicle under K.S.A. 8-1530(b). We agree and reverse and remand for further proceedings.

1

Around 2:15 a.m. on December 31, 2017, Deputy Mikel Bohringer of the Reno County Sherriff's Department initiated a traffic stop of a truck near Main Street and Heartland Drive in South Hutchison. The traffic stop took place on a four-lane road, with two southbound and two northbound lanes divided by a center median. Officer Bohringer initiated the traffic stop while driving his marked patrol vehicle, a Ford Explorer SUV, with all his emergency lights activated. The truck fully pulled onto the shoulder and stopped. Officer Bohringer stopped his patrol vehicle behind the truck, with about a third to a half of his SUV offset in the eastmost, northbound lane. The video of the traffic stop corroborates the position of the vehicles. The video of the traffic stop also shows Officer Bohringer approach the driver's side of the truck, speak with the driver, and return to his patrol vehicle. The truck turns on its turn signal and starts to drive away. Then, the video ends.

After Officer Bohringer had completed the traffic stop of the truck, he began to put his patrol vehicle back into service-ready mode. He stopped and saved the traffic stop video recording. The officer also changed his emergency lights so only the rear emergency lights were activated because he generally turns off the front panel of lights so the driver knows he or she may leave. The rear emergency lights consist of two to four, four-inch long red and blue flashing lights located in the back of the taillights. Officer Bohringer only turned off the top front panel of emergency lights but left the top back panel of lights flashing. Officer Bohringer confirmed the whole back end of his Ford Explorer was flashing red and blue lights.

After stopping the video, Officer Bohringer was about to go back into service when he saw a four-door passenger car approaching from behind in the furthest eastmost lane. The officer's patrol vehicle still had the rear lights activated when the vehicle passed but Officer Bohringer did not believe the lights were in emergency mode. The vehicle

passed Officer Bohringer's vehicle in the same, eastmost lane where the patrol vehicle was stopped. Officer Bohringer estimated the vehicle moved only six inches left of the white-dotted centerline and about 95% of the vehicle remained in the lane. The vehicle passed by so closely, Officer Bohringer stated the passing vehicle caused his patrol vehicle to move. While Officer Bohringer could not testify if the vehicle was speeding, he stated the speed limit on that portion of the road decreased from 55 miles per hour to 45 miles per hour. In addition, Officer Bohringer described the movement of his patrol vehicle as "pretty aggressive" for a vehicle that size, explaining while a semitruck—a larger vehicle—will cause his patrol vehicle to sway even if far enough away, a smaller vehicle does not.

After the vehicle passed, Officer Bohringer fully turned off his patrol vehicle's emergency lights, drove his patrol vehicle onto the road, and pursued the vehicle to conduct a traffic stop for the driver's failure to yield to an emergency vehicle. Officer Bohringer eventually pulled over the four-door passenger vehicle driven by Thompson. The traffic stop ultimately led to Thompson's arrest and the State charging Thompson with the possession of methamphetamine, possession of marijuana, and possession of drug paraphernalia.

Thompson filed a motion to suppress, arguing Officer Bohringer lacked the reasonable suspicion to conduct a traffic stop for failure to yield to an emergency vehicle because the officer had turned off the emergency lights before he passed by the stopped patrol vehicle. In addition to the above evidence, Thompson testified at the suppression hearing that around 2:18 a.m. on December 31, 2017, he was driving his vehicle on South Main in South Hutchison. Thompson admitted he drove past a law enforcement vehicle stopped on the side of the road. Thompson stated:

> "As I was approaching from South Hutch, I seen [sic] his vehicle stopped. I seen [sic] the other vehicle pull off and I seen [sic] his lights go off and as I started to come over to,

3

into the next lane to still yield to him, is when I noticed he pulled straight out and behind me and up on the highway. I seen [*sic*] his vehicle. I just didn't see any red and blue lights."

At the end of the hearing, the district court took the matter under advisement. Subsequently, the district court entered a written order suppressing the evidence from the traffic stop. The district court found that Officer Bohringer stopped Thompson's vehicle for failure to yield to an emergency vehicle after Thompson drove past the officer's stopped patrol vehicle on a four-lane road. Officer Bohringer's patrol vehicle was stopped primarily on the shoulder but extended several inches into the lane of through traffic and had the rear emergency lights activated. The district court held the State failed to prove the traffic stop was lawful, stating:

> "The State has the burden to demonstrate the officer's specific and articulable facts creating a reasonable suspicion of violation of the law. The officer testified he felt his vehicle shake as defendant passed. This fact alone does not support a finding of reasonable suspicion of violation of the law. Traffic conditions, road conditions and speed all enter in to a determination of whether a violation of K.S.A. 8-1530 has occurred."

The State filed a timely interlocutory appeal. The analysis includes additional facts as needed.

## DID THE DISTRICT COURT ERR IN SUPPRESSING THE EVIDENCE?

*Standard of Review*

An appellate court reviews the district court's factual findings on a motion to suppress for substantial competent evidence and reviews the legal conclusions drawn from those facts de novo. An appellate court does not reweigh evidence or assess the credibility of witnesses. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

4

Substantial competent evidence is such legal and relevant evidence a reasonable person could accept as adequate to support a conclusion. *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015).

*Fourth Amendment Traffic Stops*

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Section 15 of the Kansas Constitution Bill of Rights provides the same protections as the Fourth Amendment from unlawful searches and seizures. *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014). A traffic stop qualifies as a seizure under the Fourth Amendment "when a law enforcement officer displays authority and restrains an individual's liberty by stopping a vehicle on a public roadway." *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886 (2014).

"The question of whether reasonable suspicion exists is a question of law and is reviewed de novo by appellate courts." 300 Kan. 630, Syl. ¶ 8. When a defendant moves to suppress evidence based on the legality of a traffic stop, "[t]he burden is on the State to demonstrate the lawfulness of the stop. See K.S.A. 22-3216(2); *State v. Estrada-Vital*, 302 Kan. 549, 556, 356 P.3d 1058 (2015)." *State v. Chapman*, 305 Kan. 365, 371, 381 P.3d 458 (2016). For the State to meet its burden, "the officer must know of specific and articulable facts that create a reasonable suspicion the seized individual is committing, has committed, or is about to commit a crime or traffic infraction." *Jones*, 300 Kan. at 637.

When reviewing the State's justification for a traffic stop, "the State does not meet its burden by simply proving that the officer believed the circumstances were sufficient to form a reasonable suspicion." 300 Kan. at 644. Rather, the standard is objective and requires the reviewing court to ask: "'[W]ould the facts available to the officer at the

moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?'" 300 Kan. at 644 (quoting *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 [1968]). Under a review of the totality of the circumstances, a reviewing court must find that the officer stated a "'particularized and objective basis' for suspecting legal wrongdoing." *Jones*, 300 Kan. at 644-45 (quoting *United States v. Arvizu*, 534 U.S. 266, 273-74, 122 S. Ct. 744, 151 L. Ed. 2d 740 [2002]). In other words, reasonable suspicion requires an officer to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity. *State v. Thomas*, 291 Kan. 676, 688, 246 P.3d 678 (2011). Our Supreme Court has explained:

"Reasonable suspicion is a lower standard than probable cause, and '[w]hat is reasonable depends on the totality of circumstances in the view of a trained law enforcement officer.' In determining whether reasonable suspicion exists, the court must judge the officer's conduct in light of common sense and ordinary human experience under the totality of the circumstances. This determination is made with deference to a trained officer's 'ability to distinguish between innocent and suspicious circumstances,' while recognizing that it represents a 'minimum level of objective justification' and is 'considerably less than proof of wrongdoing by a preponderance of the evidence.' On appeal,

"'[t]he reviewing court does not "pigeonhole" each factor as to innocent or suspicious appearances, but instead determines whether the totality of the circumstances justifies the detention. The relevant inquiry is not whether particular conduct is "innocent" or "guilty," but whether a sufficient degree of suspicion attaches to particular types of noncriminal acts. The totality of the circumstances standard precludes a "divide-and-conquer analysis" under which factors that are "readily susceptible to an innocent explanation [are] entitled to 'no weight.'" [Citations omitted]" *State v. Sharp*, 305 Kan. 1076, 1081-82, 390 P.3d 542 (2017).

6

*Analysis*

On appeal, the State argues the district court erred in finding Officer Bohringer lacked the reasonable suspicion to initiate a traffic stop of Thompson's vehicle for failure to yield to an authorized emergency vehicle under K.S.A. 8-1530(b). In response, Thompson argues the district court found his testimony more credible—that he saw no emergency lights flashing when approaching the officer's stopped patrol vehicle—over Officer Bohringer's testimony that he thought he left the rear emergency lights on.

Appellate courts review issues of statutory interpretation de novo. See *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

"When interpreting statutes, we begin with "'the fundamental rule that [courts] give effect to the legislature's intent as it is expressed in the statute. Courts must apply a statute's language when it is clear and unambiguous, rather than determining what the law should be, speculating about legislative intent, or consulting legislative history."' We derive legislative intent by first applying the meaning of the statute's text to determine its effect in a specific situation. 'It is only when the language is unclear or ambiguous that the court employs the canons of statutory construction, consults legislative history, or considers other background information to ascertain the statute's meaning.' [Citations omitted.]" 303 Kan. at 474.

K.S.A. 8-1530(b) states:

"The driver of a motor vehicle upon approaching a stationary authorized emergency vehicle, when the authorized emergency vehicle is making use of visual signals meeting the requirements of K.S.A. 8-1720, and amendments thereto, or subsection (d) of K.S.A. 8-1722, and amendments thereto, shall do either of the following:
"(1) If the driver of the motor vehicle is traveling on a highway that consists of at least two lanes that carry traffic in the same direction of travel as that of the driver's motor vehicle, the driver shall proceed with due caution and, if possible and with due

7

regard to the road, weather and traffic conditions, shall change lanes into a lane that is not adjacent to that of the stationary authorized emergency vehicle; or

"(2) if the driver is not traveling on a highway of a type described in paragraph (1), or if the driver is traveling on a highway of that type but it is not possible to change lanes or if to do so would be unsafe, the driver shall proceed with due caution, reduce the speed of the motor vehicle and maintain a safe speed for the road, weather and traffic conditions."

Thompson's argument that there were no visible emergency lights lacks merit. The district court did not base its ruling on whether Thompson could see the emergency lights or whether Officer Bohringer did not have his emergency lights turned on. While Thompson argued in his motion to suppress that the officer's patrol vehicle had no emergency lights turned on when he drove past, the district court held that the stopped patrol vehicle's rear emergency lights were activated. And substantial evidence supports the district court's finding. Although Officer Bohringer admitted his vehicle was not in "emergency mode," he testified he only turned off the top, front light bar of emergency lights to indicate to the first driver he or she was free to leave. Officer Bohringer testified he left the rear emergency lights activated, describing these lights as located behind the taillights and consisting of two to four, four-inch LED flashing blue and red lights. The officer later testified that while he turned off the front portion of the top, exterior emergency lights, he left the back portion of the light bar activated. The whole back of the SUV was flashing red and blue lights.

While the district court made no findings of which subsection of K.S.A. 8-1530(b) applied, the district court found Thompson passed the stopped patrol vehicle on a four-lane road. The parties also agree on appeal that K.S.A. 8-1530(b)(1) applied. Under K.S.A. 8-1530(b)(1), Thompson was required to proceed with due caution when approaching Officer Bohringer's stationary authorized emergency vehicle and to change lanes into a lane not adjacent to the stationary emergency vehicle, if possible, with due regard to road, weather, and traffic conditions.

8

The district court held the State did not prove the vehicle stop was lawful because Officer Bohringer only testified that "he felt his vehicle shake as defendant passed. This fact alone does not support a finding of reasonable suspicion of violation of the law. Traffic conditions, road conditions and speed all enter in to a determination of whether a violation of K.S.A. 8-1530 has occurred." The State argues the district court erred in granting the motion to suppress because other evidence and facts showed Officer Bohringer had reasonable suspicion Thompson committed a K.S.A. 8-1530(b) violation.

At the suppression hearing, Officer Bohringer stated:

"[OFFICER BOHRINGER:] I noticed the vehicle was extremely close to my patrol vehicle. You noticed on the video that the truck was completely off the right side of the shoulder. My car was offset to the left approximately a third to a half of my vehicle and that is to create a safety lane for while I'm outside of the vehicle, just in case somebody did not see my vehicle. So I was actually in the furthest east-most lane of traffic for the northbound lanes. My patrol vehicle was offset into that eastbound lane. I'm sorry. The east side of that roadway. So I noticed that when that vehicle passed by me it had passed by me so close, that it actually moved my vehicle as I was sitting inside of it.
"[THE STATE:] Okay. And where was that vehicle on the roadway?
"[OFFICER BOHRINGER:] It was in the furthest east lane for the northbound traffic.
"[THE STATE:] Okay.
"[OFFICER BOHRINGER:] So it was in the same lane of travel that my patrol vehicle was occupying, approximately a third to half of it.
"[THE STATE:] Okay. Was the other vehicle entirely in that lane, or part of the vehicle was in that lane?
"[OFFICER BOHRINGER:] About 95 percent in that lane. It had only moved over approximately six inches left of the white dotted centerline."

Officer Bohringer expanded in cross-examination on how Thompson's passing vehicle caused his stopped patrol vehicle to move.

9

"[DEFENSE COUNSEL:] So you wait for the car to pass. It moves approximately six inches?

"[OFFICER BOHRINGER:] That's correct.

"[DEFENSE COUNSEL:] Moves your car somewhat?

"[OFFICER BOHRINGER:] It was not—I wouldn't say somewhat. It was pretty aggressive. It was a big shake to where it's not something normal for a passing vehicle.

"[DEFENSE COUNSEL:] Were you injured?

"[OFFICER BOHRINGER:] I was not injured.

"[DEFENSE COUNSEL:] Okay. So you wait for the car to pass and you're not in an emergency mode?

"[OFFICER BOHRINGER:] That's correct. My—

"[DEFENSE COUNSEL:] And you decide to stop him?

"[OFFICER BOHRINGER:] That's correct.

. . . .

"[DEFENSE COUNSEL:] Isn't it true that a semi-truck passing you will cause your car to sway?

"[OFFICER BOHRINGER:] That's correct.

"[DEFENSE COUNSEL:] Anybody passing you will cause your car to sway?

"[OFFICER BOHRINGER:] I would not say that's an accurate statement.

"[DEFENSE COUNSEL:] Really?

"[OFFICER BOHRINGER:] The—and the reason why I would say that is semis are a larger vehicle, so even if it is enough away from my vehicle it definitely will cause a vehicle to shake or move. A smaller vehicle does not.

"[DEFENSE COUNSEL:] Your car wasn't shaking, was it?

"[OFFICER BOHRINGER:] It moved.

. . . .

"[DEFENSE COUNSEL:] It's not illegal for somebody to pass you on the highway and cause your patrol car to shake or move, is it, Deputy Bohringer?

"[OFFICER BOHRINGER:] It is not."

The district court held Officer Bohringer lacked a reasonable suspicion, in part, because Officer Bohringer's testimony lacked specific, articulable facts about the traffic conditions, road conditions, and speed. But Officer Bohringer stated the specific fact that

Thompson did not change lanes into a lane not adjacent to the stopped patrol vehicle under K.S.A. 8-1530(b)(1). Officer Bohringer also described some of the traffic and road conditions. The officer's stopped patrol vehicle occupied a portion of the same lane as Thompson's passing vehicle on a four-lane roadway. Thompson's vehicle moved only six inches over the white-dotted centerline and about 95% of his vehicle was in the same lane as the stopped patrol vehicle when it passed the officer's patrol vehicle.

On appeal, the State argues this court should find the district court erred based on two cases: *State v. McLarty*, No. 117,392, 2018 WL 1546282 (Kan. App. 2018) (unpublished opinion), and *State v. Ward*, No. 93,191, 2006 WL 44386 (Kan. App. 2006) (unpublished opinion). Each decision is addressed in turn.

In *Ward*, Shawnee Police Officer John Larson stopped a vehicle on a highway entrance ramp at about 1:30 a.m. with the patrol vehicle's emergency lights activated. Officer Larson stopped his patrol vehicle with about two to three feet of the vehicle inside of the lane of traffic. Officer Larson had returned to his stopped patrol vehicle with the first driver's information, when a second vehicle—driven by Ward—came within three to four inches of hitting the stopped patrol vehicle's driver's side mirror, causing Officer Larson to say, "'Whoa.'" 2006 WL 44386, at *1. On returning the first driver's information, Officer Larson pursued and stopped Ward for failure to yield to an authorized emergency vehicle under K.S.A. 8-1530(b).

On appeal, our court held Officer Larson articulated a reasonable suspicion Ward failed to exercise "'due caution'" because he described Ward's vehicle as coming within three to four inches of the stopped patrol vehicle's driver's side mirror and as travelling nearly four to five feet closer than the previous passing car. 2006 WL 44386, at *2. The traffic stop video corroborated Officer Larson's statements. Our court also considered how the road had solid white lines marking the shoulder, which made the width of the lane 19.5 feet. Because Officer Larson had stopped his patrol vehicle with about three to

11

four feet of the vehicle in the lane, our court found Ward still had 16.5 feet to pass the officer's stopped patrol vehicle without driving on the opposite shoulder. Thus, our court held the officer articulated a reasonable suspicion to support a K.S.A. 8-1530(b) violation. 2006 WL 44386, at *2.

In *McLarty*, Douglas County Sheriff's Deputy Brad Williams pulled over a vehicle with his emergency lights activated on Sixth Street in Lawrence. The street had two lanes of traffic in each direction, divided by a center turn lane, with no shoulder. The vehicle stopped in the outside, westbound lane. Deputy Williams stopped his patrol vehicle in the center of the westbound lane, so the patrol vehicle took up about 6 feet of the 12-foot lane. As Deputy Williams exited his patrol vehicle with his driver's side door open and extending three feet outwards, he saw a second vehicle—driven by Breanna McLarty— approaching from behind in the lane closest to the center turn lane. From Deputy Williams' observations, McLarty's vehicle did not appear to slow down and may have been travelling over the speed limit. As McLarty's vehicle passed, Deputy Williams testified that it drifted towards his patrol vehicle and came very close to hitting him but then immediately swerved back to the left and continued traveling westbound. Deputy Williams estimated McLarty's vehicle was separated from him by only about 6 to 12 inches.

On appeal, the panel from our court held Deputy Williams articulated a reasonable suspicion to believe McLarty violated K.S.A. 8-1530(b)(1). While Deputy Williams testified McLarty drove past the stopped patrol vehicle in the required lane, our court held:

> "K.S.A. 8-1530(b)(1) required McLarty to pay 'due regard to the road, weather and traffic conditions,' and, although not explicitly required by the statute, even slightly reducing her speed and getting as far left in her lane of travel as she was able to would

12

have been an exercise in due caution based on the road and traffic conditions present."
2018 WL 1546282, at *5.

In all, the *McLarty* and *Ward* decisions support that the State may use an officer's description of the proximity of the driver's passing vehicle to the stopped patrol vehicle on a roadway to help establish whether an officer had reasonable suspicion of a K.S.A. 8-1530(b) violation. But these decisions provide more precise descriptions of the officer's reasonable suspicion and the roadway in question. The record here also lacks a traffic stop video showing Thompson's vehicle passing Officer Bohringer's stopped patrol vehicle.

The State argues that Officer Bohringer's testimony describing how Thompson's passing vehicle caused the stopped patrol vehicle to move provided the officer with a reasonable suspicion Thompson's vehicle did not slow down. Notably, the district court found the State presented no evidence relating to the speed of Thompson's vehicle. At the suppression hearing, Officer Bohringer admitted he had no evidence Thompson was speeding. But Officer Bohringer testified that Thompson's vehicle passed by extremely close to the stopped patrol vehicle, causing his stopped patrol vehicle to move as he was sitting in it. Officer Bohringer provided some detail, describing the "move" as not "somewhat" but "pretty aggressive." The officer testified the movement of his stopped patrol vehicle "was a big shake to where it's not something normal for a passing vehicle." Officer Bohringer also stated while semitrucks cause his patrol vehicle to sway even when driving far enough away, smaller vehicles do not.

In reviewing the totality of the circumstances, there was sufficient evidence to establish a reasonable suspicion that Thompson violated K.S.A. 8-1530(b). The district court emphasized the fact that when Thompson passed the officer's patrol vehicle the movement did not prove a violation of K.S.A. 8-1530. That may be true, but the issue to be determined is not whether a violation of K.S.A. 8-1530(b) occurred but whether there

13

was a reasonable suspicion that a violation of K.S.A. 8-1530(b) occurred. The fact that the stopped patrol vehicle moved when Thompson passed it is not the critical issue. The issue is the proximity of Thompson's vehicle to the patrol vehicle that would cause the stopped patrol vehicle to move when Thompson passed. Officer Bohringer testified that a semitruck that was some distance from another vehicle could make that vehicle move but that a passenger vehicle would not. A passenger vehicle would have to be close to cause another passenger vehicle to move and in particular to move it as much as Officer Bohringer described in this case. Clearly an indication that Thompson was in the same lane as the stopped patrol vehicle. The movement of the vehicle was not the only observation Officer Borringer relied in deciding to stop Thompson. Officer Bohringer testified that he observed that 95% of Thompson's vehicle was in the same lane as the patrol vehicle.

The district court also stated that there was no evidence as to the road, weather, and traffic conditions or the speed of Thompson's vehicle which would "all enter into whether a violation of K.S.A. 8-1530 has occurred." That may be true in determining whether a violation of K.S.A. 8-1530(b) occurred and those factors might ultimately determine guilt or innocence. But those factors are not necessary as a prerequisite to determining whether reasonable suspicion existed. Additionally, Officer Bohringer tangentially gave evidence on those factors. He testified that Thompson moved six inches into the left lane. This is evidence that Thompson was not blocked by traffic from moving into the left lane.

Based on the standard of reasonable suspicion, there was sufficient evidence to support Officer Bohringer's decision to stop Thompson for a violation of K.S.A. 8-1530(b). We reverse the district court's order of suppression and remand the case for further proceedings.

Reversed and remanded.

14