NOT DESIGNATED FOR PUBLICATION

No. 127,149

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOHNNY VILLARREAL,
*Appellant*.


MEMORANDUM OPINION

Appeal from Finney District Court; TIMOTHY R. WOODS, magistrate judge. Submitted without oral argument. Opinion filed October 4, 2024. Affirmed.

*Logan M. Schultz*, of Schultz Law Office, P.A., of Garden City, for appellant.

*Jacob T. Gayer*, assistant county attorney, *Susan Richmeier*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before WARNER, P.J., HILL and COBLE, JJ.


PER CURIAM: Johnny Villarreal appeals the denial of his motion to suppress evidence. He claims the evidence obtained after an unlawful traffic stop must be suppressed. Based on testimony from the arresting officer and video footage from the officer's dash camera, the district court concluded that the officer had a reasonable suspicion to believe that Villarreal was driving under the influence of alcohol or drugs. Our review of the record reveals the district court did not err in denying the motion. Accordingly, we affirm.

1

*A late-night stop of a slow-moving vehicle leads to an arrest.*

Late one night in April 2020, a Kansas Highway Patrol trooper was patrolling Highway 50 outside of Garden City when he noticed a jeep travelling about 10-15 mph slower than the posted 70-mph speed limit. He also observed that the jeep was bouncing or weaving within the lane of travel and may have drifted over the line onto the right-hand shoulder of the highway at least once or twice. The trooper followed the jeep and then—because of the slow driving and the jeep's bouncing and weaving within the lane—activated his emergency lights and sirens to make a traffic stop.

Once the jeep and the patrol car pulled over onto the shoulder of the highway, the trooper approached the car. When the window was rolled down, the trooper immediately smelled the odor of alcohol coming from inside the jeep. The trooper talked with the driver—later identified as Johnny Villarreal. Villarreal had difficulty rolling down the correct window and could not produce his driving license. After a second request for his driving license, Villarreal said, "[Y]a know what, I'm just going to get out with you," then turned the engine off and got out of the car.

The trooper asked him why he was getting out, and Villarreal replied, "[B]ecause I've been drinking." The trooper later testified that he smelled such a strong scent of alcohol that it "smelt like straight whisky." He then asked Villarreal how many drinks he drank that night and Villarreal admitted that he drank a 12-pack of beer.

Villarreal performed several standardized field sobriety tests. He exhibited four clues of intoxication on the horizontal and vertical gaze nystagmus tests; six clues of intoxication on the walk-and-turn tests; and failed the one-leg stand and an advanced roadside impaired driving enforcement test. A preliminary breath test resulted in a blood alcohol concentration of 0.231. After that, the trooper arrested Villarreal for driving under the influence of alcohol and transported him to the police station for further testing.

After a deprivation period of about an hour after the initial stop, Villarreal submitted to a Intoxilyzer 9000 breath test. The result was a blood alcohol concentration of 0.242.

Before trial, Villarreal moved to suppress the breath test results, claiming that the traffic stop was illegal because the trooper lacked a sufficient reason to stop his jeep. The district court heard evidence on this motion and denied it. After that, based on stipulations of the facts, Villareal was convicted and sentenced to jail for 90 days, fined, and placed on 12 months' probation. He appeals the denial of his motion to suppress.

Individuals have the right to be free from unreasonable searches and seizures under both the United States and the Kansas Constitutions. U.S. Const. amend. IV; Kan. Const. Bill of Rights § 15. The standard for determining reasonableness rests on the specific search or seizure's context, requiring only a "'minimum level of objective justification'" which is "'considerably less than proof of wrongdoing by a preponderance of the evidence.'" *State v. Thomas*, 291 Kan. 676, 687, 246 P.3d 678 (2011). A court considers the officer's "'particularized and objective basis for suspecting the particular person stopped'" is committing a crime. *Navarette v. California*, 572 U.S. 393, 396, 134 S. Ct. 1683, 188 L. Ed. 2d 680 (2014). Though, "[t]o be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" *Heien v. North Carolina*, 574 U.S. 54, 60-61, 135 S. Ct. 530, 190 L. Ed. 2d 475 (2015).

There are generally four types of encounters between individuals and police: (1) voluntary or consensual encounters, (2) investigatory detentions, (3) public safety stops, and (4) arrests. *State v. Guein*, 309 Kan. 1245, 1253, 444 P.3d 340 (2019).

A traffic stop is equivalent to a seizure under the Fourth Amendment to the United States Constitution, requiring an officer to have reasonable suspicion that an offense is

occurring, has occurred, or is about to occur. *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886 (2014); *State v. Pollman*, 286 Kan. 881, 889-90, 190 P.3d 234 (2008). Once the officer has reasonable and articulable suspicion to stop the vehicle, that stop must be reasonably tailored to the investigation of the suspected violation. See *State v. Otero*, No. 114,762, 2017 WL 4183208, at *2-3 (Kan. App. 2017) (unpublished opinion).

The exclusionary rule is the judicially created enforcement mechanism under the Fourth Amendment and operates as "a deterrent barring the introduction of evidence obtained in violation of the Fourth Amendment in criminal prosecutions." *State v. Cline*, 63 Kan. App. 2d 167, 182, 526 P.3d 686 (2023). The rule "only applies when deterrence can be achieved," and "is not the defendant's personal constitutional right." *State v. Daniel*, 291 Kan. 490, 496, 242 P.3d 1186 (2010). There are three exceptions to the exclusionary rule which allow for the admission of evidence, despite being obtained in violation of the Fourth Amendment:  good-faith exception, attenuation doctrine, and inevitable discovery. See, e.g., *Daniels*, 291 Kan. at 497-500 (good-faith exception); *State v. Tatro*, 310 Kan. 263, 269-71, 445 P.3d 173 (2019) (attenuation doctrine); *Cline*, 63 Kan. App. 2d at 185 (inevitable discovery).

Reasonable suspicion demands that law enforcement possess minimal justification for initiating a traffic stop. Deference must be given to a trained officer's "'ability to distinguish between innocent and suspicious circumstances,'" not evaluating whether particular conduct is innocent or guilty, "'but whether a sufficient degree of suspicion attaches to particular types of noncriminal acts.'" *State v. Sharp*, 305 Kan. 1076, 1081, 390 P.3d 542 (2017); see *United States v. Sokolow*, 490 U.S. 1, 10, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989). Whether the officer's conduct was reasonable is considered in the context of common sense and ordinary human experience under the circumstances. *Sharp*, 305 Kan. at 1081.

4

Courts often use a totality of the circumstances approach to considering the events and facts known to the officer at the time. Such an inquiry necessary "precludes a 'divide-and-conquer analysis' under which factors that are 'readily susceptible to an innocent explanation [are] entitled to "no weight."'" *State v. Coleman*, 292 Kan. 813, 818, 257 P.3d 320 (2011) This approach also deters the ability of "law enforcement officers or the courts to selectively choose the facts that would establish reasonable suspicion to justify police action." *Sharp*, 305 Kan. at 1084. If, perhaps, "officers were allowed to cherry-pick certain facts, they would be able to operate with unbridled discretion to conduct traffic stops with impunity." 305 Kan. at 1085.

Villarreal argues that because the trooper told the dispatcher and wrote down that the reason for the stop violated K.S.A. 8-1522(a), the stop was unlawful based on the fact that no actual traffic violation occurred. He also argues that the acts of slow driving and bouncing or weaving within a single lane of travel are lawful acts and therefore do not amount to reasonable suspicion that a crime has occurred.

Villarreal's conclusion rests on the assumption that the officer's stated reasons and subjective belief at the time of the stop are dispositive. They are not. Instead, the proper inquiry is an examination of the totality of the circumstances. We must determine whether the stop was reasonable through the lens of a similarly trained officer in similar circumstances. See *Sharp*, 305 Kan. at 1081.

Here, we must look at what the trooper knew and saw before the stop and disregard Villareal's later admission of drinking a 12-pack of beer earlier that evening. The trooper saw a car driving on the highway late at night. Even though there were no adverse weather conditions, the jeep was driving 10-15 miles per hour slower than the speed limit. It was bouncing or weaving in its lane of travel. Based on the trooper's training and experience, he reasonably suspected that the driver may be impaired—either through intoxication or texting while driving.

Thus, the circumstances at the time of the traffic stop—in context—establish that it was objectively reasonable for the trooper to believe that Villarreal had committed the crime of DUI. Therefore, the district court did not err by denying Villarreal's motion to suppress.

Affirmed.