NOT DESIGNATED FOR PUBLICATION

No. 117,496

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRIAN JOSHUA LUTZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; DAVID DEBENHAM, judge. Opinion filed June 15, 2018. Affirmed.

*Clayton J. Perkins*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., HILL and BUSER, JJ.

PER CURIAM: The United States Supreme Court has held a dog sniff of a vehicle during a traffic stop is constitutional as long as the duration of the stop does not exceed the time it takes to complete the ordinary objectives of the traffic stop. *Rodriguez v. United States*, 575 U.S. ___, 135 S. Ct. 1609, 1615-16, 191 L. Ed. 2d 492 (2015). Here, Topeka police officers observed a vehicle commit a traffic infraction and initiated a traffic stop. The driver was slow to respond. Backup officers were called in, including a canine unit. While one officer completed writing the warning citation for the driver, the other officers began removing the vehicle occupants for a dog sniff of the vehicle. When an officer opened Brian Joshua Lutz' door he observed a marijuana grinder in the door

1

pocket. The dog sniff was called off, the vehicle searched, and drugs and drug paraphernalia were located.

Brian moved to suppress the evidence, arguing that officers unlawfully extended the duration of the traffic stop to initiate the dog sniff. The district court denied the motion finding that one officer was still working on completing the warning citation while the other officers began the process for the dog sniff. As a result, the duration of the traffic stop was not extended when the marijuana grinder was located. We agree and affirm.

FACTUAL AND PROCEDURAL HISTORY

Topeka Police Officers Brandon Austin and Scott Sinsel were surveilling a home because of complaints of drug activity. Austin was also acting as a field training officer for Sinsel. The officers saw a vehicle approach the house and leave shortly thereafter. Austin decided to follow the vehicle.

After following the vehicle, Austin observed the vehicle fail to signal a lane change. Austin activated his emergency lights to stop it. The vehicle slowed to a stop, then continued for a short distance, and then fully stopped. Austin requested backup because of the way the driver of the vehicle acted after the emergency lights were activated, and because there were three individuals in the vehicle. Austin met with the driver of the vehicle, Robin Lutz, informed her of the reason for the stop, and requested her driver's license. Austin instructed Sinsel to retrieve the front passenger's driver's license because he noticed he did not have a seatbelt on. The front passenger was Robin's brother, Brian Lutz.

The officers ran a warrant check on Brian and Robin. After the warrant checks came back negative, Austin called for a canine officer to search the vehicle. The canine

2

officer was about a block away. Before the canine officer arrived, backup officers arrived. Within just over eight minutes of the initial stop the canine officer arrived. Sometime after 8 minutes, but before 12 minutes, had elapsed Austin instructed Sinsel to write a warning citation for Robin. There was no discussion regarding whether he would also be required to write a citation for her brother's seat belt violation.

While Sinsel was writing the warning citation, Austin and the other officers at the scene began to remove the individuals from the vehicle so that the dog sniff could occur. Officer Lee Trout approached the front passenger side of the vehicle and asked Brian to step out of the vehicle. When Brian's door opened, Trout noticed a marijuana grinder in the pocket of the door. At that point, Trout informed the other officers of what he had found and conveyed to his colleagues that a dog sniff would no longer be necessary. At this point the warning ticket for Robin had not been issued.

Trout searched the vehicle and located the grinder, methamphetamine, and marijuana in the area where Brian was sitting. Trout also searched Brian's person and found several cigars filled with marijuana.

Brian was charged with several drug offenses, as well as a traffic infraction for failure to wear a seatbelt. He moved to suppress the evidence, arguing, in part, that the officers unreasonably extended the duration of the stop in an attempt to allow a dog sniff. The district court held that there was not reasonable suspicion to extend the initial traffic stop to investigate suspected drug activity. However, the court went on to hold that the activity that led to the discovery of the grinder occurred during the initial traffic stop and that the officers did not impermissibly extend the stop. Therefore, the court denied Brian's motion to suppress.

Brian was found guilty by a jury, and later sentenced, on the drug charges. Brian timely appeals the denial of the suppression order.

ANALYSIS

*The district court did not err by denying Brian's motion to suppress.*

On appeal, Brian argues that the district court erred in holding that the officers did not unreasonably prolong the traffic stop because the officers requested and began the process for a dog sniff. In response, the State argues that drug evidence was discovered in the vehicle prior to the warning citation being issued, and that the issuing of the warning citation was not unreasonably prolonged.

*Standard of Review*

The standard of review of a district court's decision on a motion to suppress applies a bifurcated standard. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. We review the ultimate legal conclusion using a de novo standard. In reviewing the factual findings, the appellate court does not reweigh the evidence or assess the credibility of witnesses. *State v. Neighbors*, 299 Kan. 234, 240, 328 P.3d 1081 (2014).

*Discussion*

When law enforcement performs a traffic stop constitutional issues arise because a seizure occurs within the meaning of the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights. *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886 (2014). For a seizure to be constitutional, the officer must have specific and articulable facts that create a reasonable suspicion the seized individual is committing, has committed, or is about to commit a crime or traffic infraction. 300 Kan. at 637. Yet "[a] traffic stop is not rendered invalid by the fact that it is a mere pretext for a search for illegal substances." 300 Kan. 630, Syl. ¶ 4.

Brian mainly relies on *Rodriguez*, 135 S. Ct. 1609, to support his argument that the traffic stop here was prolonged beyond permissible limits. In *Rodriguez*, the defendant was pulled over after he drove on the shoulder of a highway for a short time. The officer asked for Rodriguez' information and ran a warrants check. The officer then went back to Rodriguez' vehicle and requested the passenger's information. Again, the officer ran a warrants check. After more than 20 minutes elapsed, the officer issued a written warning to Rodriguez, but the officer did not consider Rodriguez free to leave. The officer asked for permission to have his dog perform a sniff of the vehicle, which Rodriguez denied. The officer told Rodriguez to exit the vehicle, and a few minutes later the officer completed a dog sniff which resulted in methamphetamine being located.

On appeal, the Court noted that when an officer conducts a traffic stop "addressing the infraction is the purpose of the stop" and that the stop may not last longer than necessary to fulfill that purpose. 135 S. Ct. at 1614. Authority for the traffic stop ends when the tasks tied to the stop are—or reasonably should have been—completed. 135 S. Ct. at 1614. That said, the Court also noted that some investigations that are unrelated to the initial traffic stop are permissible if those investigations do not lengthen the traffic stop. 135 S. Ct. at 1614-15 (citing *Illinois v. Caballes*, 543 U.S. 405, 408, 125 S. Ct. 834, 160 L. Ed. 2d 842 [2005]). The Court was clear to state that the "seizure remains lawful only 'so long as [unrelated] inquiries do not measurably extend the duration of the stop.'" *Rodriguez*, 135 S. Ct. at 1615 (quoting *Arizona v. Johnson*, 555 U.S. 323, 333, 129 S. Ct. 781, 172 L. Ed. 2d 694 [2009]). During a traffic stop an officer can ordinarily check the driver's license, determine whether there are outstanding warrants, inspect registration and insurance, and issue a citation. *Rodriguez*, 135 S. Ct. at 1615. A dog sniff is permissible if the duration of the stop is not prolonged beyond the time it takes to complete the ordinary objectives of the traffic stop. 135 S. Ct. at 1615-16.

The question then is whether the traffic stop here was unreasonably extended by requesting a dog sniff. The district court found that the stop was not unreasonably extended:

> "The evidence indicates that Officer [S]ins[e]l was still in the process of writing the citations during the time the request was made for a canine officer, during the arrival of Officer Ahlstedt, at the time Ms. Lutz and [Brian] were requested to exit the vehicle. . . . The actions of the officers, including Officer Ahlstedt and Officer Trout, to this point, did not prolong or extend the duration of the original traffic stop any further than what was necessary to complete the investigation for the traffic violations and issue citations for the traffic violations."

Substantial competent evidence supports this holding.

Brian's assertion that Sinsel took time off from writing the citation to discuss the pending dog sniff is not supported by the record. Austin said that he discussed with Trout and Officer Kelsey Krogman the plan to have a dog sniff the vehicle. As for Sinsel, Austin testified that he "told [Sinsel] at that time to go ahead and write a warning citation to Robin for the violation." Sinsel's testimony also does not suggest that he discussed the dog sniff with the other officers, instead he "was tasked with writing the warning citation."

Because the traffic stop was not prolonged due to the dog sniff, the officers did not violate Brian's constitutional rights by beginning the dog sniff process—removing him from the car. See *Rodriguez*, 135 S. Ct. at 1616; *Caballes*, 543 U.S. at 409 (holding dog sniff of exterior of car during lawful seizure does not implicate legitimate privacy interests); *Maryland v. Wilson*, 519 U.S. 408, 414-15, 117 S. Ct. 882, 137 L. Ed. 2d 41 (1997) (holding officers can remove vehicle occupants from car pending completion of traffic stop). The subsequent search of the vehicle was lawful based on Trout viewing the marijuana grinder. See *State v. Sanchez-Loredo*, 294 Kan. 50, 55, 272 P.3d 34 (2012)

6

(noting plain view is a recognized exception to warrant requirement); *State v. Harrington*, 2 Kan. App. 2d 592, 593-94, 585 P.2d 618 (1978) (plain view of marijuana justified warrantless search).

*Brian abandoned any argument concerning the opening of the passenger door by Trout.*

Brian also briefly argues that his rights were infringed when Trout opened the passenger door, which allowed Trout to view the marijuana grinder that was not visible before. In response, the State argues that this court should not address the issue because it was not raised below. The State is correct that Brian did not raise the issue below. Issues not raised before the trial court cannot be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Moreover, Brian makes does not explain why this court should consider his argument for the first time on appeal as required by Kansas Supreme Court Rule 6.02(a)(5) (2018 Kan. S. Ct. R. 34).

Our Supreme Court continues to reiterate that Rule 6.02(a)(5) means what it says and is ignored at a litigant's own peril. See *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015); *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014). That peril includes a ruling that an issue improperly briefed will be deemed waived or abandoned. 298 Kan. at 1085. The direction of the Supreme Court could not be any clearer. "[L]itigants have no excuse for noncompliance with Rule 6.02(a)(5)." *Godfrey*, 301 Kan. at 1044.

Because Brian failed to explain why this issue is properly before the court for the first time on appeal, we deem the argument to be abandoned.

Affirmed.