No. 126,321

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS, ex rel. KANSAS HIGHWAY PATROL,
*Appellee*,

v.

$28,350 in U.S. CURRENCY (Boris Rodriguez),
*Appellant.*

SYLLABUS BY THE COURT

1.

Although forfeiture actions are civil in nature, the protections against unreasonable searches and seizures guaranteed by the Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights are applicable. Thus, the constitutional exclusionary rule applies to forfeiture proceedings.

2.

Once the officer determines that the driver has a valid license and the purpose of the traffic stop has ended, the driver must be allowed to leave without further delay or questioning unless (1) the encounter ceases to be a detention and the driver voluntarily consents to additional questioning or (2) during the traffic stop the officer gains a reasonable suspicion that the driver is engaged in illegal activity.

3.

The United States Supreme Court has developed a "totality of the circumstances" test to determine whether there is a seizure or a consensual encounter. Under the test, law enforcement interaction with a person is consensual, not a seizure if, under the totality of the circumstances, the law enforcement officer's conduct conveys to a reasonable person that they are free to refuse the requests or otherwise end the encounter.

4.

The United States Supreme Court has held that a dog sniff of the exterior of an automobile during an otherwise lawful traffic stop does not implicate legitimate privacy interests and is not a search subject to the Fourth Amendment.

5.

Under the Kansas Standard Asset Seizure and Forfeiture Act, K.S.A. 60-4101 et seq., the plaintiff's attorney shall have the initial burden of proving the interest in the property is subject to forfeiture by a preponderance of the evidence. If the State proves the interest in the property is subject to forfeiture, the claimant has the burden of showing by a preponderance of the evidence that the claimant has an interest in the property which is not subject to forfeiture.

6.

An appellate court reviews the district court's ruling on a motion to continue for an abuse of discretion.

Appeal from Wabaunsee District Court; JEFFREY R. ELDER, judge. Oral argument held November 12, 2024. Opinion filed January 10, 2025. Affirmed.

*Pantaleon Florez Jr.*, of Topeka, for appellant.

*Stacy R. Bond*, of Kansas Highway Patrol, *Anthony J. Powell*, solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

BEFORE SCHROEDER, P.J., MALONE and BRUNS, JJ.

MALONE, J.:  This is a civil asset seizure and forfeiture case under the Kansas Standard Asset Seizure and Forfeiture Act (KSASFA), K.S.A. 60-4101 et seq. A Kansas Highway Patrol (KHP) trooper stopped Boris Rodriguez on Interstate 70 for committing

two traffic violations. The traffic stop led to a vehicle search and the trooper found $28,350. The State alleged the money was related to drug trafficking. The case proceeded to trial after Rodriguez' request for a continuance was denied. After hearing the evidence, the district court found that the KHP established the seized property was proceeds from the sale of marijuana and was subject to forfeiture under the KSASFA.

On appeal, Rodriguez claims (1) the trooper lacked reasonable suspicion to initiate the traffic stop; (2) the seizure was unreasonably extended in violation of Rodriguez' constitutional rights; (3) the district court improperly granted the forfeiture because of the constitutional violations; (4) the district court abused its discretion in denying the trial continuance; and (5) Rodriguez must be awarded prejudgment interest because of the unconstitutional taking of his currency. After thoroughly reviewing the record, we find no reversible error and affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On October 12, 2020, KHP Trooper Chandler Rule was on routine patrol on I-70 in Wabaunsee County. Rule was also a certified K-9 handler and his service dog, Cain, was in the patrol vehicle. While traveling west on I-70, Rule observed a black Chevrolet Volt commit what he believed were two traffic violations. Rule later testified that he observed the Chevrolet Volt pass a semi-truck and trailer and then merge back into the right lane in an unsafe manner. Rule also testified that he observed the Volt "tailgate" a passenger vehicle while changing lanes. As a result of these observations, Rule decided to stop the Volt for unsafe passing and following too closely.

After observing the traffic violations but before initiating the stop, Rule contacted dispatch and ran the California license plate number on the Volt. From the license plate reader database, Rule learned that the vehicle had been to or passed through the state of Georgia six times in the last six months. Rule activated the dashcam in his patrol vehicle

3

after he observed the traffic violations so he could record the stop, but the dashcam failed to clearly record the encounter and was not admitted into evidence.

Rule activated his emergency lights and the Volt promptly pulled over to the side of the highway. After the vehicle had safely stopped, Rule believed that he deactivated his emergency lights because that was his usual practice. Rule approached the vehicle from the passenger side and contacted the driver, later identified as Rodriguez, who was the vehicle's only occupant. Rule explained why he had stopped Rodriguez and asked to see his driver's license and vehicle registration. While Rodriguez was retrieving these documents, Rule asked what brought him to Kansas. He replied that he had traveled to Florida to visit his aunt who had recovered from COVID and that he was returning home to San Jose, California. Rule asked Rodriguez how often he goes to Florida and Rodriguez stated he had not been out there in a long time.

Rule testified that he spoke to Rodriguez in a "conversational" tone throughout the encounter. There were no other law enforcement officers at the scene at the beginning of the stop. Rule did not believe that he placed his "hand on [Rodriguez'] vehicle in any way, shape, or form." Rule was wearing a service weapon as part of his uniform, but he did not draw the weapon at any time during the encounter.

During their conversation, Rule observed that Rodriguez seemed unusually nervous. Beads of sweat were visible on his forehead and Rodriguez was visibly shaking when handing over his driver's license. Rule observed that the vehicle had a lived-in look about it because of two coolers in the backseat as well as many water bottles and a guitar. Rule later testified that this fact meant little in itself but is something "we see commonly in people involved with criminal activity that are traveling across the country." Rule told Rodriguez that he would issue a warning for the traffic violations. Rule observed that Rodriguez remained nervous even after being told he was only receiving a warning.

4

Rule took Rodriguez' driver's license and registration back to the patrol vehicle to confirm the information through dispatch and to check for any outstanding warrants for Rodriguez. Rule also asked dispatch to run a criminal history check, which was completed while Rule was checking the driver's license and registration. Rodriguez' criminal history check revealed that he had been arrested for cultivating and selling marijuana in California. After receiving the information from dispatch, Rule entered the warning for the traffic violations into the KHP database.

Rule returned to Rodriguez' vehicle on the passenger side and handed the driver's license and registration to him. Rodriguez asked Rule some questions about following too closely and cutting off vehicles. Once Rodriguez was done asking questions, Rule considered the conversation to be over and he told Rodriguez to have a safe trip. Rule was not standing in the way of Rodriguez leaving. Rule took a step away from the vehicle and then returned and asked if he could ask some more questions. Rodriguez agreed.

Rule asked Rodriguez how long he had owned the car and Rodriguez said for about a year and a half. Rule then asked Rodriguez if he had ever been arrested. Rodriguez admitted that he had been arrested in a money scheming incident at Walmart, but he failed to mention he had been arrested for cultivating and selling marijuana. Rule found the nondisclosure of the drug trafficking arrest to be "extremely suspicious."

Rule then asked whether Rodriguez had any drugs, guns, or large sums of money in the vehicle. Rodriguez said he did not have drugs or guns. When asked about money, Rodriguez said he did not have large sums of money in the vehicle and looked over his shoulder toward the trunk. Rule testified this behavior was consistent with someone trafficking large amounts of drugs or proceeds from drug transactions as individuals involved in criminal activity inadvertently look at the contraband when mentioned.

At this point, Rule believed Rodriguez was somehow involved in trafficking money or narcotics and asked to search the vehicle. Rodriguez said no. Rule then asked Rodriguez if his K-9 could sniff around the vehicle. Rodriguez told Rule he could perform the K-9 sniff "if [he] had to." Rule asked Rodriguez to exit the vehicle and performed a safety check for weapons. He then went back to his patrol vehicle to leash Cain and commanded him to sniff around the vehicle. Cain did two rotations around the vehicle and, on the second rotation, started showing erratic behavior, alerting Rule to the odor of narcotics at the passenger side front window.

Rule told Rodriguez that Cain had alerted and asked if Rodriguez had been around narcotics. Rodriguez said he had a license to smoke marijuana in California. Rule believed the K-9 alert gave him probable cause to search the vehicle. Before the search, Rodriguez told Rule he had $3,000 in the backseat. Rule found the $3,000 and located two speaker systems with tool marks and screws holding them together. Based on Rule's training and experience, the tool marks and screws suggested the speakers were being used to hide contraband. Rule found a power tool inside the vehicle and opened the speakers where he found 10 bundles of mixed denominations of currency rubber banded together. Rule had seen money bundled this way before when it was involved in criminal activity. Rule also found money in a food container in a cooler packed similarly to the money found in the speakers. When counted later, the money found in Rodriguez' vehicle totaled $28,350. Rule did not find any controlled substances in the vehicle.

When the vehicle search was completed, Rule placed the money in his patrol vehicle and asked Rodriguez to follow him to the KHP office in Topeka. By that time another trooper had arrived at the scene. At the KHP office, Rule and another trooper performed a "currency screen" as a way to confirm the prior K-9 alert. The troopers took Cain into various clean rooms and the K-9 did not alert to the odor of narcotics. The troopers then placed the currency seized from Rodriguez' vehicle into one of the same rooms. Cain again found the currency and alerted to the odor of narcotics.

6

Logan Littell, a KHP intelligence analyst, later examined and downloaded contents from Rodriguez' cellphone under a search warrant. Littel testified that based on his training and experience, he was familiar with typical language used in drug cases and Rodriguez' cellphone contained conversations that appeared to be drug related. Littell also testified that the cellphone had notes with monetary numbers that appeared to be drug prices for various quantities and types of marijuana. The notes referred to "carts," and Littell testified this is "a short term for cartridges, which then translates to THC cartridges, which is smokable THC oil." The State introduced two notes as exhibits and Littell testified they resembled a drug ledger. The State also introduced an exhibit with 40 photographs of marijuana leaves taken off Rodriguez' cellphone.

Luke Rieger, a task force officer with the Drug Enforcement Administration and the KHP, interviewed Rodriguez. Rieger provided Rodriguez with his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). During the interview, Rodriguez mentioned he had obtained a small business association loan between $20,000 and $22,000. Rodriguez explained he had withdrawn the money over the course of several months and was carrying the money in his car. Rieger testified the discrepancy between the amount of money Rodriguez reported to him and the amount of money found in his car was common in these investigations. He explained that someone legally carrying large sums of money usually knows exactly how much they have, but not persons involved in the drug trade. Rieger testified, based on his training and experience, that the notes recovered from Rodriguez' cellphone looked like a drug dealer ledger and the currency recovered from Rodriguez' vehicle was likely for facilitating the purchase or sale of marijuana. Rieger noted he had conducted a substantial number of interviews and thought Rodriguez was behaving in a deceptive manner and withholding information.

On December 11, 2020, the State, on behalf of the KHP, filed a notice of pending forfeiture of the $28,350 it had seized from Rodriguez in Wabaunsee District Court. The State asserted the property was proceeds of a felony drug offense and should be forfeited

7

to the State. Legal counsel entered an appearance for Rodriguez. In May 2022, Rodriguez moved to deny the forfeiture and for the money to be returned to him, asserting the traffic stop was illegal and the contents of the vehicle search should be suppressed.

A bench trial, including a hearing on the suppression motion, was scheduled for July 15, 2022. The State requested a continuance a few days before the scheduled trial because of a witness problem. Rodriguez objected to the continuance motion because he had already traveled to Kansas for the hearing. The district court ultimately continued the matter a day before the trial because of an ongoing trial in another case, without addressing the State's continuance motion. On September 16, 2022, the district court provided written notice that the bench trial was rescheduled for November 8, 2022.

On November 7, 2022—a day before the rescheduled trial—Rodriguez moved for a continuance alleging he had exhausted his limited resources traveling to Kansas for the first trial setting and he "has been unable to save sufficient funds with which to appear before the court for this hearing." The State objected, claiming it had arranged for its witnesses to be at the hearing, including one from out of state, and asserting Rodriguez should not have waited until the day before the hearing to request a continuance.

The district court convened the bench trial/suppression hearing the next day. Rodriguez appeared by counsel. The district court first took up Rodriguez' continuance request filed the day before and denied it "[d]ue to the close proximity of the trial date."

Rule, Littell, and Rieger testified for the State. Rodriguez' counsel recalled Rule as his only witness. Rule testified that Cain had completed a 13-week training course with the KHP and was certified to alert to the odor of narcotics. Rule acknowledged that Cain sometimes had false positive alerts for narcotics, but this had occurred "[f]ive or less [times] out of the thousands of sniffs." Rule explained that Cain was trained to alert for the odor of narcotics and would not have alerted to currency unless there was a "residual

8

odor" of narcotics on the currency, which had happened before. Rule acknowledged that the currency recovered from Rodgriguez' vehicle was not tested for drug residue.

After hearing the evidence and arguments of counsel, the district court ruled from the bench. As for the suppression motion, the district court found that Rule had "probable cause" to stop Rodriguez for the traffic violations. The district judge stated, "I'm not going to go through all of the totality of the circumstances, but the trooper felt that more was going on." The district court then found that Rule had probable cause to search the vehicle based on the K-9 alert to the odor of narcotics. Based on the money found in the car and the other evidence presented by the State including the evidence discovered on Rodriguez' cellphone, the district court found that the KHP established the seized property was proceeds from the sale of marijuana and was subject to forfeiture under the KSASFA. Rodriguez timely appealed the district court's judgment.

DID RULE HAVE REASONABLE SUSPICION TO INITIATE THE TRAFFIC STOP?

Rodriguez first claims that he did not commit any traffic violations and Rule's testimony did not support an objective basis for the traffic stop. Rodriguez contends that Rule lacked reasonable articulable suspicion that he committed, was committing, or was about to commit a crime. The State counters that the initial stop was supported by reasonable suspicion based on Rule's testimony about the traffic violations.

"Whether reasonable suspicion exists is a question of law." *State v. Moore*, 283 Kan. 344, 350, 154 P.3d 1 (2007). Appellate courts apply a mixed standard of review requiring substantial competent evidence to support the district court's findings while the legal conclusions are reviewed de novo. 283 Kan. at 350.

The Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights protect individuals from unreasonable searches and

9

seizures. U.S. Const. amend. IV; Kan. Const. Bill of Rights, § 15. These rights are fundamental and must be safeguarded by the courts. The Kansas Supreme Court has long held that the search and seizure provisions of the Kansas and United States Constitutions are similar and provide the same rights and protections. See, e.g., *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014). "Although forfeiture actions are civil in nature, the protections against unreasonable searches and seizures guaranteed by the Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights are applicable. Therefore, the constitutional exclusionary rule applies to forfeiture proceedings." *State v. One 2008 Toyota Tundra*, 55 Kan. App. 2d 356, Syl. ¶ 1, 415 P.3d 449 (2018).

A traffic stop in which a law enforcement officer pulls over a vehicle and "restrains an individual's liberty" constitutes a seizure. *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886 (2014). For such seizure to be constitutionally reasonable, a law enforcement officer must have "specific and articulable facts that create a reasonable suspicion the seized individual is committing, has committed, or is about to commit a crime or traffic infraction." 300 Kan. at 637. A traffic infraction provides an objectively valid reason for a traffic stop. 300 Kan. at 637. The United States Supreme Court has held that a valid traffic stop is not rendered invalid by the fact that it is a pretext for a narcotics search. *Whren v. United States*, 517 U.S. 806, 812, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996). The Kansas Supreme Court also adopts this view. *Jones*, 300 Kan. at 638.

K.S.A. 8-1516(a) states: "The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle." K.S.A. 8-1523(a) states: "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway."

Rule testified he observed Rodriguez pass a semi-truck and did not leave a reasonable distance between his vehicle and the truck when he merged back into the right lane. Rule also testified Rodriguez followed another passenger vehicle too closely. Rule's testimony was unrebutted, and the district court found that it supported the traffic stop.

On appeal, Rodriguez boldly claims that he "was not violating any rule of the road and the officer's testimony did not support an objective basis for the stop." Rodriguez asserts that he would have challenged Rule's testimony about the alleged traffic violations had he testified in court, and he had his own dashcam recordings not admitted into evidence that would have refuted some of Rule's testimony. We will address Rodriguez' claim that the district court abused its discretion in denying a trial continuance later in this opinion. But based on Rule's testimony, substantial competent evidence supports the district court's finding that Rodriguez committed two traffic violations. The district court did not err in finding that Rule had reasonable suspicion to initiate the traffic stop.

WAS THE SEIZURE UNREASONABLY EXTENDED IN
VIOLATION OF RODRIGUEZ' CONSTITUTIONAL RIGHTS?

Next, Rodriguez claims that even if the initial traffic stop was a lawful seizure, it was unreasonably extended in violation of his constitutional rights. More specifically, Rodriguez argues that Rule predetermined he would search the vehicle and/or arrest Rodriguez without probable cause or reasonable suspicion and pressured Rodriguez into submitting to an extended detention. Rodriguez also claims his consent to the K-9 sniff around his vehicle was an involuntary submission to authority. Finally, Rodriguez asserts that the vehicle search was unlawful and the evidence seized should be suppressed.

The State contends that the entire encounter was lawful. The State argues that after the purpose of the traffic stop had ended, Rule lawfully extended the scope and duration of the seizure based on Rodriguez' voluntary consent and also because Rule had gained

11

reasonable suspicion that Rodriguez was engaged in criminal activity. The State argues that the open-air K-9 sniff was not a search requiring consent. According to the State, the K-9's alert to the odor of narcotics provided probable cause to search the vehicle.

As stated before, the constitutional exclusionary rule applies to forfeiture proceedings. *One 2008 Toyota Tundra*, 55 Kan. App. 2d 356, Syl. ¶ 1. "On a motion to suppress, an appellate court generally reviews the district court's findings of fact to determine whether they are supported by substantial competent evidence and reviews the ultimate legal conclusion de novo." *State v. Cash*, 313 Kan. 121, 125-26, 483 P.3d 1047 (2021). When the material facts supporting a district court's decision on a motion to suppress evidence are not in dispute, the ultimate question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

> "Appellate review of a trial court's determination of whether a reasonable person would feel free to refuse the law enforcement officer's requests or otherwise terminate the encounter consists of two parts: (1) the factual underpinnings are reviewed under a substantial competent evidence standard and (2) the ultimate legal conclusion drawn from those facts, i.e., whether a reasonable person would feel free to refuse the requests or to terminate the encounter, is reviewed under a de novo standard." *State v. Thompson*, 284 Kan. 763, Syl. ¶ 10, 166 P.3d 1015 (2007).

The scope and duration of a traffic stop must be no longer than necessary to serve the legitimate purpose of the stop. *State v. DeMarco*, 263 Kan. 727, 733, 952 P.2d 1276 (1998) (citing *Terry v. Ohio*, 392 U.S. 1, 19, 88 S. Ct. 1868, 20 L. Ed. 2d 889 [1968]). "[T]he legitimacy of the duration of a traffic stop is measured by the time it takes for an officer to ask for, obtain, and record the driver's license, proof of insurance, and vehicle registration; run a computer check; and issue a citation." *Jones*, 300 Kan. at 640. Once the officer determines that the driver has a valid license and the purpose of the traffic stop has ended, the driver must be allowed to leave without further delay or questioning unless

(1) the encounter ceases to be a detention and the driver voluntarily consents to additional questioning or (2) during the traffic stop the officer gains a reasonable and articulable suspicion that the driver is engaged in illegal activity. *Thompson*, 284 Kan. at 774-75.

The State asserts that Rule lawfully extended the scope and duration of the traffic stop based on Rodriguez' voluntary consent to answer more questions. The heart of this case is whether Rule lawfully extended the duration of the traffic stop when he employed a maneuver known as the "Kansas Two Step" to obtain Rodriguez' consent for additional questioning. See *State v. Gonzalez*, 57 Kan. App. 2d 510, 513, 455 P.3d 419 (2019) (referring to maneuver used by KHP troopers to ask for driver's consent for additional questioning as the Kansas Two Step). The landmark Kansas Supreme Court case addressing this issue is *Thompson*, so we will examine that case in detail.

City of McPherson Police Officer Weinbrenner stopped Dennis W. Thompson for having a faulty headlight. Weinbrenner's emergency lights remained activated even after the stop. Weinbrenner asked for Thompson's driver's license and insurance documents and ran the license through police dispatch. Another officer arrived at the scene and parked behind Weinbrenner's patrol car but did not approach Thompson's vehicle or have any direct contact with him. Just before Weinbrenner returned to Thompson's vehicle, he told the back-up officer that he would ask Thompson for consent to search his vehicle because Weinbrenner had information that Thompson had previously been involved in illegal drugs. Weinbrenner returned Thompson's driver's license, issued a verbal warning about the headlight, and told Thompson to have a nice day. Weinbrenner started to walk away after issuing the warning but then returned within a second or two and asked, "'By the way, can I ask you a few questions?'" 284 Kan. at 769.

The subsequent questioning resulted in Thompson saying that Weinbrenner could search his vehicle. The search yielded a baggie containing a powder residue and assorted drug paraphernalia. Thompson subsequently granted authorities written permission to

13

search his garage where many items of manufacturing paraphernalia were found. Thompson moved to suppress the evidence, and the key issue was whether Weinbrenner lawfully extended the scope and duration of the initial traffic stop based on Thompson's consent to submit to additional questioning after the traffic stop had ended. Although the district court found there was "'no disengagement'" before Weinbrenner asked for Thompson's consent to additional questioning, it denied the motion to suppress the evidence and a jury found Thompson guilty of manufacturing methamphetamine and other crimes. 284 Kan. at 769-70. The Court of Appeals reversed Thompson's convictions, focusing on the district court's finding that there was no disengagement, and ruled that the district court should have suppressed the evidence.

On a petition for review, the Kansas Supreme Court emphasized that to determine whether there is a seizure or a consensual encounter, the United States Supreme Court has developed a "totality of the circumstances" test. 284 Kan. at 775. These United States Supreme Court cases, from *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973), to *Ohio v. Robinette*, 519 U.S. 33, 117 S. Ct. 417, 136 L. Ed. 2d 347 (1996), are analyzed in the *Thompson* opinion. 284 Kan. at 781-95. "[U]nder the test, law enforcement interaction with a person is consensual, not a seizure if, under the totality of the circumstances, the law enforcement officer's conduct conveys to a reasonable person that he or she [is] free to refuse the requests or otherwise end the encounter." 284 Kan. at 775. An objective standard is applied; the actual state of mind of either the officer or the driver is not a relevant circumstance. 284 Kan. at 809-10. The State has the burden of establishing the voluntariness of a consent. 284 Kan. at 776.

Because the determination of whether a reasonable person would feel free to terminate an encounter or refuse to answer questions is fact-driven, no list of factors is exhaustive or exclusive. Some factors often occur, including the following ones that tend to show that an encounter was consensual:  knowledge of the right to refuse, a clear communication that the driver is free to terminate the encounter or refuse to answer

14

questions, return of the driver's license and other documents, and a physical disengagement before further questioning. 284 Kan. at 811. Other factors that often occur suggest a coercive environment, including the presence of several officers, an officer's display of a weapon, some physical touching of the person, the use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory, the prolonged retention of personal effects such as identification, a request to accompany the officer somewhere, interaction in a nonpublic place, absence of other members of the public, or the display of emergency lights. 284 Kan. at 811.

After conducting an extensive analysis of the relevant circumstances, our Supreme Court determined that Weinbrenner's return of Thompson's driver's license and his statement to have a nice day was not a clear statement that the traffic stop had ended and was not "a clear physical disengagement." 284 Kan. at 811. Still, the court went on to find that under the totality of the circumstances presented in the case, a reasonable person in Thompson's position would feel free to decline the officer's request for questioning or otherwise terminate the encounter. 284 Kan. at 812. Thus, our Supreme Court concluded that the district court correctly found the detention was consensual. 284 Kan. at 812.

Returning to our case, the State argued in district court that Rodriguez voluntarily consented to additional questioning from Rule after the purpose of the traffic stop had ended. Alternatively, the State argued that Rule had gained reasonable suspicion that Rodriguez was engaged in criminal activity to extend the scope and duration of the stop. Rodriguez argued the opposite on both issues. The district court found that Rodriguez' traffic violations justified the initial stop. The district judge also stated, "I'm not going to go through all of the totality of the circumstances, but [Rule] felt that more was going on." The district court then found that Rule had probable cause to search the vehicle based on the K-9 alert. The district court concluded that the evidence seized in the vehicle search was admissible and denied the motion to suppress.

15

Supreme Court Rule 165(a) (2024 Kan. S. Ct. R. at 232) imposes on the district court the duty to provide adequate findings of fact and conclusions of law on the record to explain the court's decision on contested matters. See K.S.A. 2023 Supp. 60-252. Here, the district court's factual findings and legal conclusions were inadequate to fully address the arguments the parties presented. But generally, a party bears the responsibility to object to inadequate findings of fact and conclusions of law to give the district court an opportunity to correct any alleged inadequacies. See *In re Guardianship and Conservatorship of B.H.*, 309 Kan. 1097, 1107-08, 442 P.3d 457 (2019). When, as here, no objection is made to a district court's findings of fact or conclusions of law on the basis of inadequacy, an appellate court can presume the district court found all facts necessary to support its judgment. *Bicknell v. Kansas Dept. of Revenue*, 315 Kan. 451, 510, 509 P.3d 1211 (2022).

Moreover, we observe that the evidence offered by the parties in district court on the suppression issue was essentially undisputed. The parties merely disagreed on the application of the law to the undisputed facts. When the material facts supporting a district court's decision on a motion to suppress evidence are not in dispute, the ultimate question of whether to suppress is a question of law over which an appellate court has unlimited review. *Hanke*, 307 Kan. at 827. Thus, despite the district court's inadequate findings of fact and conclusions of law, we are in a position to review the record on appeal and decide whether the district court erred in denying the motion to suppress.

Rodriguez' case is factually similar to *Thompson*. The State argues that after the purpose of the traffic stop had ended, Rule lawfully extended the scope and duration of the seizure based on Rodriguez' voluntary consent to answer more questions. As our Supreme Court explained in *Thompson*, we must employ a "totality of the circumstances" test based on an objective standard to decide whether a reasonable person in Rodriguez' position would have felt free to refuse Rule's request for additional questioning or

16

otherwise end the encounter. 284 Kan. at 775. We will examine the same relevant circumstances the court examined in *Thompson* and apply them to our facts.

*Knowledge of the right to refuse*

Under this factor, this court must determine whether Rodriguez knew he had the right to refuse to answer Rule's questions and leave without further incident, if the evidence allows the court to make that finding. Here Rodriguez did not testify and the evidence does not show whether he knew he had the right to refuse to answer Rule's questions and end the encounter. But as our Supreme Court held in *Thompson*, "[w]hile the defendant's knowledge of a right to refuse to consent is a factor to be taken into account, the State is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." 284 Kan. 763, Syl. ¶ 16.

There is a fact about this case that bears mentioning here. Even after Rodriguez agreed to answer more questions at the end of the traffic stop, just moments later he *refused* to give Rule consent to search his vehicle. Rodriguez appeared to know his rights on consenting to a search and knew how to say no. If Rodriguez was not too intimidated to deny Rule's request to search his vehicle, it appears he may have known that he did not need to submit to Rule's other questioning and could have ended the encounter. But from the evidence presented at the hearing, we cannot conclude one way or another whether Rodriguez knew he had the right to refuse additional questioning and leave.

*Clear communication of the right to refuse*

After reinitiating contact with Rodriguez, Rule did not clearly communicate to Rodriguez that he could terminate the encounter or refuse to answer questions. The United States Supreme Court has held that the Fourth Amendment does not require that a lawfully seized person be advised that they are "free to go" before their consent will be

recognized as voluntary. *Robinette*, 519 U.S. at 39-40. Kansas courts apply this same rule. "A law enforcement officer is not required to inform a person that he or she is free to leave or that the person is not required to answer any questions. But the absence of this advice is a factor that may be considered under the totality of the circumstances." *Gonzalez*, 57 Kan. App. 2d at 518. Rule returned Rodriguez' driver's license and registration and told him to have a safe trip. This communication is similar to the officer's statement to the driver in *Thompson* "to have a nice day." 284 Kan. at 769. While Rule's statement—telling Rodriguez to have a safe trip—may generally signal the end of a conversation, a reasonable person may consider the conversation ongoing when an officer, within seconds, reapproaches and asks if he or she could continue questioning the individual. The State cannot rely on this factor to show the encounter was consensual.

*Return of driver's license and other documents*

"During a routine traffic stop, a law enforcement officer's retention of a driver's documents is significant because it indicates that a reasonable person, as a general rule, would not feel free to terminate the encounter." *Thompson*, 284 Kan. 763, Syl. ¶ 18. The record reflects Rule returned Rodriguez' driver's license and registration. The return of the driver's documents will often, but not always, signal to a reasonable person that the traffic stop is over and further questioning is consensual.

*Physical disengagement before further questioning*

Rodriguez argues Rule executed the "'Kansas Two Step'" by taking a step away from his vehicle and then reapproaching to ask investigatory questions. He contends this was not a clear physical disengagement to convey to Rodriguez the traffic stop had ended. Rule's actions were similar to the officer's actions in *Thompson* where the officer started to walk away after issuing a warning but returned within a second or two and

18

asked Thompson if he could ask a few more questions. Our Supreme Court determined these facts failed to establish "a clear physical disengagement." 284 Kan. at 811.

*Presence of more than one officer*

Rule was the only law enforcement officer involved for most of the encounter with Rodriguez. A second trooper arrived after the car search was completed and helped Rule escort Rodriguez to the KHP office in Topeka. The record does not reflect the second trooper was involved in the search or interacted with Rodriguez. Thus, the presence of two officers at the end of the encounter was not coercive.

*Display of a weapon*

Rule was presumably in uniform when the stop occurred but did not draw his gun at any time during the encounter with Rodriguez. There was no display of a weapon to coerce Rodriguez.

*Physical contact by the officer*

In *Gonzalez*, the officer "was leaning into the Escalade with his hands physically placed on the open passenger window of the Escalade at the same time he was asking if Gonzalez would be willing to answer more questions." 57 Kan. App. 2d at 519-20. Although this court applied the totality of circumstances test to the facts of the case, it appears this court relied substantially on the officer's physical contact with the vehicle in concluding that the driver did not voluntarily consent to additional questioning. 57 Kan. App. 2d at 517-21. No evidence suggests Rule engaged in any type of physical contact with Rodriguez' person aside from checking Rodriguez for weapons after Rodriguez exited the vehicle before Cain performed an open-air sniff. This physical contact was not coercive and was simply for Rule's safety while conducting the search. The contact was also after Rodriguez had agreed to answer more questions. As for physical contact with

the vehicle, Rule did not believe that he placed his "hand on [Rodriguez'] vehicle in any way, shape, or form." This factor suggests a lack of coercion.

*Use of commanding tone of voice*

Rule testified he spoke to Rodriguez in a conversational tone like the tone he used while testifying at trial. There is no evidence Rule's questions were "badgering, repetitive, or accusatory." See *Gonzalez*, 57 Kan. App. 2d at 520. The record reflects Rule was not using a commanding tone of voice in a coercive manner.

*Interaction in a nonpublic place*

Rule's encounter with Rodriguez was on a public highway and not in any isolated or remote area. This factor favors a lack of coercion.

*The display of emergency lights*

The display of emergency lights is often an important factor in determining whether there is a show of authority amounting to a seizure. See *State v. Greever*, 286 Kan. 124, 136, 183 P.3d 788 (2008) (officer's seizure of motorist occurred when motorist saw the emergency lights and submitted to officer's show of authority by not fleeing); *State v. Morris*, 276 Kan. 11, 20, 72 P.3d 570 (2003) (court found encounter was not consensual when officers parked behind the motorist's truck that was stopped in a secluded location off a roadway, activated the emergency lights, and illuminated the back of the truck with spotlights). Rule activated his emergency lights to initiate the traffic stop but testified his normal practice was to turn off his front emergency lights when the apprehended vehicle had pulled to the shoulder of the road. Rule testified he had no reason to believe he acted differently during this stop. The fact Rule's emergency lights were not activated suggests a lack of coercive behavior by the trooper.

20

*Attempt to control the ability to flee*

Rule parked his patrol vehicle on the shoulder of the highway behind Rodriguez' vehicle without blocking Rodriguez' ability to drive away. When he reapproached Rodriguez' vehicle to return the driver's license and registration, Rule was standing on the passenger side of Rodriguez' vehicle and was not standing in the way of him leaving. This factor overall tends to suggest a lack of coercion.

*Rule's intent to detain Rodriguez*

Rodriguez makes much of the fact that Rule testified he intended to detain Rodriguez based on reasonable suspicion even if Rodriguez did not consent to answer more questions. But as our Supreme Court explained in *Thompson*, "the officer's subjective intent [is] irrelevant unless the driver is somehow made aware of the intent." 284 Kan. at 807. Rule believed he had reasonable suspicion that Rodriguez was involved in criminal activity by the time he returned his driver's license and registration, and we will address that issue later in this opinion. But Rule did not convey this subjective belief to Rodriguez. There is nothing wrong for a law enforcement officer to ask a person for consent to detain them or to search them even though the officer believes there are other legal grounds to support the action. That does not mean the consent is tainted or otherwise involuntary, as long as the person is not made aware of the officer's subjective intent. The fact that Rule intended to detain Rodriguez for further questioning even if he did not consent is irrelevant to whether Rodriguez' consent was voluntary.

*Totality of the circumstances*

No one factor is dispositive. *Thompson*, 284 Kan. at 803. We cannot help observing that Rodriguez' case is much like *Thompson* except in that case the officer's emergency lights remained activated during the entire encounter while it appears that Rule deactivated his emergency lights once he safely stopped Rodriguez. In *Thompson*,

21

our Supreme Court determined that the officer's return of Thompson's driver's license and his statement to have a nice day was not a clear statement that the traffic stop had ended. 284 Kan. at 811. Likewise, the court determined that the officer's conduct of stepping away from the vehicle and immediately returning to ask more questions failed to establish "a clear physical disengagement." 284 Kan. at 811. Still, the court went on to find that under the totality of the circumstances in that case, a reasonable person in Thompson's position would feel free to decline the officer's request for questioning or otherwise terminate the encounter. 284 Kan. at 812.

Rule was the only officer involved in most of the encounter and it occurred on a public highway. He spoke with Rodriguez in a nonthreatening, conversational tone. Although he was wearing a uniform, he never drew his weapon. There is no evidence that Rule placed his hands on Rodriguez' vehicle. Rule returned Rodriguez' driver's license and registration and then answered some questions Rodriguez asked about following too closely and cutting off vehicles. Once Rodriguez was done asking questions, Rule considered the conversation to be over and he told Rodriguez to have a safe trip. Rule was not standing in the way of Rodriguez leaving. Rule took a step away from the vehicle and then returned and asked if he could ask some more questions. Rodriguez agreed.

The ultimate legal conclusion drawn from the facts—whether a reasonable person would feel free to refuse the officer's request for more questioning or to terminate the encounter—is reviewed under a de novo standard. *Thompson*, 284 Kan. 763, Syl. ¶ 10. If the Kansas Supreme Court found from the totality of the evidence presented in *Thompson* that a reasonable person in Thompson's position would feel free to decline the officer's requests or otherwise terminate the encounter, then we are hard-pressed to reach a different conclusion here. Under this analysis, we agree with the State that Rodriguez voluntarily consented to answer additional questions from Rule at the end of the traffic stop and the extension of the stop did not violate Rodriguez' constitutional rights.

22

*Shaw v. Jones*

Rodriguez cites *Shaw v. Jones*, 683 F. Supp. 3d 1205 (D. Kan. 2023), to support his claim that Rule's actions were unlawful and violated his constitutional rights. *Shaw* is a 42 U.S.C. § 1983 action brought by several plaintiffs against Colonel Herman Jones in his capacity as Superintendent of the KHP. The plaintiffs alleged that Jones "maintains a policy and practice of detaining drivers in violation of the Fourth Amendment" and sought injunctive and declaratory relief to remedy practices allegedly but not exclusively undertaken in the course of drug interdiction. 683 F. Supp. 3d at 1219-20.

Presented with evidence of several traffic stops made by KHP troopers between 2014 and 2022, the federal district court found that the KHP has been engaged in a practice of using the so-called "Kansas Two-Step" in a manner that violates the Fourth Amendment and issued an injunction preventing the KHP from using the tactic. 683 F. Supp. 3d at 1260-61. The *Shaw* court found:

> "KHP troopers conduct the Kansas Two-Step under circumstances where reasonable drivers do not feel free to leave and do not knowingly, voluntarily and intelligently consent to re-engage with the trooper. In the traffic stops examined at trial, a reasonable driver would not believe that the coercive aspect of the original traffic stop had ceased.
>
> "Troopers occupy a position of power and authority during a traffic stop, and when a trooper quickly reapproaches a driver after a traffic stop and continues to ask questions, the authority that a trooper wields—combined with the fact that most motorists do not know that they are free to leave and KHP troopers deliberately decline to tell them that they are free to leave—communicates a strong message that the driver is not free to leave. A reasonable driver could not knowingly and intelligently believe otherwise. In such circumstances, the theory that a driver who remains on the scene gives knowing and voluntary consent to further questioning is nothing but a convenient fiction; in the circumstances present in this case, troopers unlawfully detained drivers, without reasonable suspicion, for further questioning." 683 F. Supp. 3d at 1247.

In short, the *Shaw* court concluded that the KHP's use of the "Kansas Two-Step" is inherently—and categorically—designed and deployed in a manner to unlawfully extend a traffic stop in violation of the driver's constitutional rights. The court determined as a matter of law that a reasonable person will never feel free to decline an officer's request for additional questioning when a car stop has ended. But in reaching this conclusion, the court completely abandoned the "totality of the circumstances" test mandated by the Kansas Supreme Court in *Thompson*, which in turn is based on decades of United States Supreme Court consent search jurisprudence. See 284 Kan. at 781-95. In fact, federal courts have explicitly held that police-citizen encounters in which an officer uses the so-called Two-Step may be classified as consensual under the totality of the circumstances. See *United States v. Hunter*, 663 F.3d 1136, 1145 (10th Cir. 2011); *United States v. Guerrero*, 472 F.3d 784, 786, 789 (10th Cir. 2007); *United States v. Velazquez*, 349 Fed. Appx. 339, 341-42 (10th Cir. 2009) (unpublished opinion).

*Shaw* has no precedential value, even as persuasive authority, because it is on appeal and is not a final decision. A notice of appeal was filed on December 18, 2023, and the Tenth Circuit has not issued an opinion as of the date this opinion is filed. In *Thompson*, the Kansas Supreme Court recognized that the factual nature of the "totality of the circumstances" test can make the test difficult to apply, and has led commentators to criticize the United States Supreme Court's consent search jurisprudence. See 284 Kan. at 777-79 (listing several law journal articles criticizing United States Supreme Court consent search jurisprudence). But the *Thompson* court recognized it must follow the United States Supreme Court's interpretation and application of the Fourth Amendment. 284 Kan. at 779. And as we said before, the Kansas Supreme Court has long held that the search and seizure provisions of the Kansas and United States Constitutions are similar and provide the same rights and protections. See, e.g., *Neighbors*, 299 Kan. at 239.

Just as the Kansas Supreme Court must follow the United States Supreme Court's interpretation and application of the Fourth Amendment, this court is duty bound to

24

follow Kansas Supreme Court precedent unless there is some indication that the Supreme Court is departing from its previous position. *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022). *Thompson* is controlling law in Kansas on this issue, and this court must be guided by that decision in determining whether Rodriguez voluntarily consented to answer questions from Rule and whether the extension of the traffic stop violated Rodriguez' constitutional rights.

*The State's alternative argument on reasonable suspicion*

The State also argued in district court that after the purpose of the traffic stop had ended, Rule lawfully extended the scope and duration of the seizure because by that time he had gained reasonable suspicion that Rodriguez was engaged in criminal activity. Rodriguez argued the opposite. In its ruling denying the motion to suppress, the district judge stated, "I'm not going to go through all of the totality of the circumstances, but [Rule] felt that more was going on." On appeal, the State reprises its argument that the duration of the traffic stop was lawfully extended based on reasonable suspicion.

By the time Rule returned the driver's license and vehicle registration to Rodriguez, Rule knew that (1) Rodriguez' vehicle registered in California had been to or passed through Georgia six times in the last six months, (2) Rodriguez was unusually nervous during the encounter even after he learned he was only receiving a warning, with beads of sweat visible on his forehead and visibly shaking when handing over his driver's license, (3) Rodriguez' vehicle had a lived-in look, which Rule testified was common in people involved in criminal activity and traveling across the country, and (4) Rodriguez' criminal history disclosed a previous arrest for cultivating and selling marijuana.

Rodriguez argues that Rule admitted in his testimony that he did not have reasonable suspicion of criminal activity to extend the duration of the traffic stop. This is incorrect. Rule admitted in his testimony that his suspicions about Rodriguez did not

25

amount to probable cause to search Rodriguez' vehicle. But as Rule correctly stated at the hearing, reasonable suspicion to detain Rodriguez demands less than probable cause to search his vehicle. Rule believed all along that he had reasonable suspicion to detain Rodriguez for further questioning even if Rodriguez would have denied consent.

Whether Rule gained enough reasonable suspicion that Rodriguez was engaged in criminal activity to extend the duration of the traffic stop is a close question. The district court did not make a clear ruling on the issue, and we need not resolve the issue in this appeal. We simply conclude that Rule lawfully extended the scope and duration of the traffic stop based on Rodriguez' voluntary consent to answer more questions.

*Probable cause to search Rodriguez' vehicle*

If Rule did not have reasonable suspicion of criminal activity by the time he returned Rodriguez' driver's license and registration, he gained it just a few moments later. Rule asked Rodriguez how long he had owned the car and Rodriguez said for about a year and a half. Rule then asked Rodriguez if he had ever been arrested. Rodriguez admitted that he had been arrested in a money scheming incident at Walmart, but failed to mention he had been arrested for cultivating and selling marijuana. This was contrary to the information Rule had just received in the criminal history check. Rule found the nondisclosure of the drug trafficking arrest to be "extremely suspicious." Rule also asked Rodriguez if he had any drugs, guns, or large sums of money in the vehicle. When asked about money, Rodriguez said he did not have large sums of money in the vehicle but looked over his shoulder toward the trunk, which Rule testified was consistent with someone who had contraband in the vehicle.

Rule asked Rodriguez if he could search his vehicle, and Rodriguez said no. Rule then asked Rodriguez if his K-9 could sniff around the vehicle. Rodriguez told Rule he could perform the K-9 sniff "if [he] had to." Rodriguez argues that his consent to the

26

open-air dog sniff was equivocal and involuntary. But a dog sniff of the exterior of an automobile during an otherwise lawful traffic stop does not implicate legitimate privacy interests and is not a search subject to the Fourth Amendment. *Illinois v. Caballes*, 543 U.S. 405, 409, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005); *State v. Lutz*, 312 Kan. 358, 366, 474 P.3d 1258 (2020). Thus, Rule did not need Rodriguez' consent for the open-air dog sniff. Moreover, the dog sniff did not measurably extend the duration of the stop because Rule's K-9 was already in his patrol vehicle. This was not a situation where the driver was detained for several minutes waiting for a K-9 to arrive from another location. See *State v. Arceo-Rojas*, 57 Kan. App. 2d 741, 746-47, 458 P.3d 272 (2020) (driver was detained for an additional four or five minutes for K-9 to arrive from another location).

Rule's K-9, Cain, alerted to the odor of narcotics from Rodriguez' vehicle. At the hearing, the State established that Cain had completed a 13-week training course with the KHP and was certified to alert to the odor of narcotics. Although Cain sometimes had false positive alerts for narcotics, this had occurred "[f]ive or less [times] out of the thousands of sniffs." Cain's alert to the odor of narcotics at the exterior of Rodriguez' vehicle, along with all the other information Rule had gathered, provided Rule with probable cause to search Rodriguez' vehicle. See *State v. Barker*, 252 Kan. 949, 959-60, 850 P.2d 885 (1993) (K-9's alert may supply probable cause to search a vehicle provided there is some evidence that the K-9's behavior reliably indicates the likely presence of a controlled substance); *State v. Brewer*, 49 Kan. App. 2d 102, 110, 305 P.3d 676 (2013) (evidence of K-9's certification and regular training provided the necessary foundation to establish the dog's alert provided probable cause to search the vehicle).

Rodriguez later gave a statement to Rieger after receiving his *Miranda* rights. Littell searched Rodriguez' cellphone under a warrant. Rodriguez does not challenge the admissibility of this evidence on appeal except to argue it was fruit of the poisonous tree.

*Conclusion*

Applying the "totality of the circumstances" test mandated in *Thompson*, we conclude that a reasonable person in Rodriguez' position would have felt free to refuse Rule's request to ask more questions at the end of the traffic stop. Rule did not unlawfully extend the scope and duration of the stop in violation of Rodriguez' constitutional rights. The open-air dog sniff of the exterior of Rodriguez' vehicle while he was lawfully detained did not constitute a search. Rule gained probable cause to search Rodriguez' vehicle when the certified K-9 with regular training alerted to the odor of narcotics, and Rule recovered $28,350 in currency inside the vehicle. The district court did not err in denying Rodriguez' motion to suppress the evidence.

DID THE DISTRICT COURT ERR IN GRANTING THE FORFEITURE?

Rodriguez argues that the district court erred in "granting [the] forfeiture based upon a 4th Amendment violation." But we have determined that Rule did not violate Rodriguez' Fourth Amendment rights during their encounter. Rodriguez also asserts that the State failed to meet its burden that the currency was subject to forfeiture.

The standard of review for a civil forfeiture action where the district court has conducted an evidentiary hearing is to determine whether the district court's findings of fact are supported by substantial competent evidence and whether they support the district court's conclusions of law. *Kansas Highway Patrol v. 1985 Chevrolet Astro Van*, 24 Kan. App. 2d 841, 844, 954 P.2d 718 (1998). The appellate court does not reweigh the evidence or pass upon the credibility of the witnesses. If the evidence and all reasonable inferences drawn from it, when viewed in the light most favorable to the prevailing party, support the district court's decision, that decision will be affirmed. *City of Hoisington v. $2,044 in U.S. Currency*, 27 Kan. App. 2d 825, 828, 8 P.3d 58 (2000).

28

K.S.A. 2023 Supp. 60-4105 states in part:

"The following property is subject to forfeiture:

. . . .

"(d) all property of every kind, including, but not limited to, cash and negotiable instruments derived from or realized through any proceeds which were obtained directly or indirectly from the commission of an offense listed in K.S.A. 60-4104, and amendments thereto."

K.S.A. 2023 Supp. 60-4104(b) states that conduct and offenses giving rise to forfeiture include "violations involving controlled substances, as described in K.S.A. 21-5701 through 21-5717, and amendments thereto." This includes the unlawful cultivation and or distribution of controlled substances. K.S.A. 21-5705.

K.S.A. 2023 Supp. 60-4113(h) states:

"The issue shall be determined by the court alone. The plaintiff's attorney shall have the initial burden of proving the interest in the property is subject to forfeiture by a preponderance of the evidence. If the state proves the interest in the property is subject to forfeiture, the claimant has the burden of showing by a preponderance of the evidence that the claimant has an interest in the property which is not subject to forfeiture."

After hearing the evidence, the district court found that "the plaintiff has sustained its burden" that the currency seized from Rodriguez was subject to forfeiture as "money that was obtained from the sale of marijuana." We have already observed there was no objection based on the inadequacy of the district court's findings which were based on evidence at the hearing that was essentially undisputed. The record on appeal is sufficient for our court to exercise de novo review over the district court's legal conclusion that the currency seized from Rodriguez' vehicle was subject to forfeiture under the KSASFA.

29

We will not recite again all the evidence presented by the State at Rodriguez' bench trial. But we will emphasize the highly incriminating evidence recovered from Rodriguez' cellphone under a search warrant. Littell testified that based on his training and experience, he was familiar with typical language used in drug cases and Rodriguez' cellphone contained conversations that appeared to be drug related. Littell also testified that the cellphone had notes with monetary numbers that appeared to be drug prices for various quantities and types of marijuana. The notes referred to "carts," and Littell testified this is "a short term for cartridges, which then translates to THC cartridges, which is smokable THC oil." The State introduced two notes as exhibits and Littell testified they resembled a drug ledger. The State also introduced an exhibit with 40 photographs of marijuana leaves taken off Rodriguez' cellphone. Rieger also testified, based on his training and experience, that the notes recovered from Rodriguez' cellphone looked like a drug ledger and the currency was likely for facilitating the purchase or sale of marijuana. We have no difficulty concluding that the State presented substantial competent evidence supporting the district court's legal conclusion that the currency seized from Rodriguez' vehicle was subject to forfeiture under the KSASFA.

### DID THE DISTRICT COURT ABUSE ITS DISCRETION IN DENYING RODRIGUEZ' MOTION TO CONTINUE THE BENCH TRIAL?

Rodriguez argues the district court abused its discretion by denying his motion to continue the bench trial because it failed to give him a reasonable opportunity to appear and support his case. Rodriguez' argument on this issue is essentially one paragraph in his brief. The State asserts that the district court did not abuse its discretion in denying Rodriguez' motion for continuance which was filed one day before the hearing.

An appellate court reviews the district court's ruling on a motion to continue for an abuse of discretion. Judicial discretion is abused only when no reasonable person would take the view adopted by the district court. See *Miller v. Glacier Development Co.*, 284

30

Kan. 476, 493, 161 P.3d 730 (2007). Rodriguez bears the burden of showing an abuse of discretion. See *State v. Keys*, 315 Kan. 690, 708, 510 P.3d 706 (2022).

A bench trial, including a hearing on the suppression motion, was scheduled for July 15, 2022. The State requested a continuance a few days before the scheduled trial because of a witness problem. Rodriguez objected to the continuance motion because he had already traveled to Kansas for the hearing. The district court ultimately continued the matter a day before the trial because of an ongoing trial in another case, without addressing the State's continuance motion. On September 16, 2022, the district court provided written notice that the bench trial was rescheduled for November 8, 2022.

On November 7, 2022—a day before the rescheduled trial—Rodriguez moved for a continuance alleging he had exhausted his limited resources traveling to Kansas for the first trial setting and he "has been unable to save sufficient funds with which to appear before the court for this hearing." The State objected, claiming it had arranged for its witnesses to be at the hearing, including a witness who came from New Mexico, and asserting Rodriguez should not have waited until the day before the hearing to request a continuance. The district court took up the motion the next day and Rodriguez appeared by counsel. After allowing the parties to make a record, the court denied the continuance.

Rodriguez implies that the district court treated the parties differently and unfairly when it granted the first trial continuance when the State had a witness problem but denied the second continuance when Rodriguez claimed he could not attend. But the district court granted the first trial continuance because of its own schedule, without addressing the State's continuance motion. On September 16, 2022, the district court provided written notice that the bench trial was rescheduled for November 8, 2022. Rodriguez then waited until the day before the trial to move for a continuance. As the State pointed out, it would seem Rodriguez should have known sooner that he could not

31

afford to make the second trip. His counsel stated that Rodriguez' plan to attend the hearing "fell through" but gave no details as to why he did not realize it sooner.

Rodriguez complains that he could not challenge Rule's testimony and that he could not introduce certain evidence at trial because he was not there to lay a foundation. If Rodriguez' testimony was necessary, his counsel could have asked to bifurcate the hearing and present Rodriguez' testimony later or present his testimony by Zoom. But counsel made no such request. Just because the district court denied the continuance motion does not mean it would not have considered such a reasonable request.

Perhaps another judge would have granted Rodriguez' continuance motion on the eve of trial. But we cannot say that no reasonable person would agree with the district court's decision to deny the motion—and that is the standard of review we must apply. Based on that standard of review, we conclude Rodriguez fails to show the district court abused its discretion in denying the motion to continue the bench trial.

## IS RODRIGUEZ ENTITLED TO PREJUDGMENT INTEREST?

Finally, Rodriguez argues that he must be awarded prejudgment interest "for the unconstitutional taking of his lawful currency." This claim fails because we have found there was no unconstitutional taking. Moreover, Rodriguez cites K.S.A. 16-201 and K.S.A. 16-204(d) as the only authority supporting his claim for prejudgment interest. These statutes are not related to forfeiture proceedings. We observe that K.S.A. 60-4116(f)(2) was amended effective July 1, 2024, allowing a prevailing claimant in a proceeding under the KSASFA to recover postjudgment interest and, in cases involving currency, any interest actually paid from the date of seizure. L. 2024, ch. 79, § 8. Rodriguez does not argue that the amended statute would apply to his case.

Affirmed.

* * *

SCHROEDER, J., concurring in part and dissenting in part: For the reasons explained below, I respectfully concur in part and dissent in part from the majority opinion.

I concur with the majority that this case is controlled by *State v. Thompson*, 284 Kan. 763, 166 P.3d 1015 (2007), where the extended traffic stop became a consensual encounter, and we are hard-pressed to reach a different conclusion. As the majority points out, *Thompson* would suggest a reasonable person in Rodriguez' shoes would have felt free, under the totality of the circumstances, to leave after the officer said, "[H]ave a safe trip." Slip op. at 18.

However, I agree with Justice Beier's dissent in *Thompson* that "the majority expects far too much chutzpah from a person in defendant's position." 284 Kan. at 814 (Beier, J., dissenting). I agree some traffic stops certainly may be converted into a voluntary encounter. Here, however—in circumstances remarkably similar to those in *Thompson*—more should be required than the totality of the circumstances demonstrated. It seems to me the nature of the encounter did not change and Rodriguez' extended detention violated his rights under the Fourth Amendment to the United States Constitution. See 284 Kan. at 814 (Beier, J., dissenting). As such, I believe our Supreme Court should revisit *Thompson*.

I find it difficult to believe Rodriguez voluntarily consented to additional questioning from Rule as the purpose of the stop had not clearly ended. Rule, therefore, needed "at least a minimal level of objective justification" in which he could "articulate more than an 'inchoate and unparticularized suspicion or "hunch"' of criminal activity." See *Illinois v. Wardlow*, 528 U.S. 119, 123-24, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000).

33

Even if Rule gained such an objective justification, it was not until after the equivocal and involuntary consent to answer more questions.

The majority emphasizes that Rodriguez agreed to answer additional questions but refused to consent to a vehicle search, indicating Rodriguez knew his rights and how to say no. Slip op. at 17. I do not agree. While Rule's statement—telling Rodriguez to have a safe trip—may generally signal the end of a conversation, a reasonable person would consider the conversation ongoing when an officer immediately reapproaches and asks if he or she can continue questioning the individual. I observe no clear detachment between the traffic stop and Rule's desire to extend the stop. The totality of the circumstances ought to account for the fact a law enforcement officer is in a position of authority and a reasonable person would submit to such an authoritative figure, especially on a busy highway, such as I-70. An individual is more likely to recognize his or her right to refuse a search of his or her person or belongings—an action much more invasive and accusatory than mere questioning—just as Rodriguez did.

Again, no one factor is dispositive. *Thompson*, 284 Kan. at 803. While more of the factors relied on in *Thompson* under current law suggests a consensual encounter, based on the totality of the circumstances, I cannot find a reasonable person—aside from maybe a lawyer versed in Fourth Amendment law—would have felt free to refuse the request by a uniformed law enforcement officer to answer more questions or otherwise end the encounter. When Rule took a single step away from Rodriguez' vehicle then returned, Rodriguez reasonably could have concluded Rule either forgot to ask additional questions earlier in the encounter or decided he needed more information stemming from the traffic stop. A reasonable person conversing with another would not consider a conversation over if that person said goodbye and immediately turned around to add a last-minute thought on the topic they were just discussing. The social customs surrounding everyday conversations should be considered in determining how a reasonable person would perceive the situation. See *Georgia v. Randolph*, 547 U.S. 103, 111, 126 S. Ct. 1515, 164

34

L. Ed. 2d 208 (2006) (finding "great significance given to widely shared social expectations" when evaluating reasonableness of search based on third-party consent). Further, Rule may or may not have placed his hand on the window but was standing near the vehicle. A reasonable person would wait to pull away until someone standing nearby was a safe distance away.

While I recognize *Shaw v. Jones*, 683 F. Supp. 3d 1205, 1236 (D. Kan. 2023), is on appeal and is not a final decision, I tend to agree Rule's behavior in that case was like his behavior in this case and his "thought process was based on an absurd and tenuous combination of innocent factors that were not objectively suspicious." The *Shaw* court similarly found the factors Rule relied on there were "so ordinary and benign that singly and in combination, they contributed only minimally, if at all, to the reasonable suspicion calculus." 683 F. Supp. 3d at 1237. I cannot see how Rodriguez' continued detention after the traffic stop was a consensual encounter. But, I recognize we are duty-bound to follow our Supreme Court's precedent as laid out in *Thompson*, and I do so reluctantly. See *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022).

I dissent with respect to the majority's finding the district court did not abuse its discretion in denying Rodriguez' request for a trial continuance. Slip op. at 32. Regardless of whether the district court initially continued the trial at the State's request or because of its own schedule, it provided only one day's notice to the parties. Rodriguez had already incurred the expense to travel to Kansas and was in Kansas and ready for trial. I acknowledge the district court's stated reason for the continuance, but it created quite the windfall for the State. In fact, Rodriguez objected to the initial continuance as he had spent over $1,000 to travel from California to Kansas for the trial. The district court also failed to consider the fact several thousand dollars of Rodriguez' money had been seized and, at that point, the State had not proved the seizure was proper. Yet the district court found it unreasonable to continue the trial at Rodriguez' request because his plans to

35

attend collapsed on him at the last minute. I find this denial resulted in undue prejudice to him.

The State acknowledged Rodriguez had several exhibits—dashcam videos of his drive from Florida to Kansas leading up to the traffic stop—in his motion to deny forfeiture and return property that could not be admitted into evidence without Rodriguez present to lay proper foundation. Regardless of whether the first continuance was initially the result of the district court's schedule or at the State's request, I find it unreasonable to continue the initial trial date to the detriment of Rodriguez, creating a windfall for the State, then denying the subsequent request for a continuance by Rodriguez. Had the first continuance not occurred, the State would not have been able to present its case without Rule available to testify. Meanwhile, Rodriguez would have been better able to defend his position and admit relevant and necessary exhibits. Instead, Rodriguez—whose money was seized during the traffic stop and had spent over $1,000 to appear for the first trial date before it was continued the day before it was scheduled—was deprived of the ability to fully present his case. His presence for the original trial setting reflects he wanted to be present for his day in court.

I believe Rodriguez, in this fact-specific case, has met his burden to establish the district court abused its discretion and acted unreasonably. I would reverse the district court's denial of Rodriguez' request for a continuance and allow Rodriguez a reasonable "'opportunity to be heard, "at a meaningful time and in a meaningful manner."'" See, e.g., *U.S.D. No. 461 v. Dice*, 228 Kan. 40, 44-45, 612 P.2d 1203 (1980) (essential elements of due process are notice and opportunity to be heard at meaningful time in meaningful manner). I find it arbitrary and unreasonable for the district court to grant a continuance the day before the initial trial date—even as a result of its own schedule—enabling the State to fully present its case at a later date, while later denying Rodriguez a continuance so he could fully present his case. Accordingly, I would reverse and remand for a new trial.

36